**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| HARRIET HAMPTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. ________________ |
| | § | |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA**

**COMES NOW**, Plaintiff Harriet Hampton, and makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendant's other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

**JURISDICTION AND VENUE**

1. This Court's jurisdiction over the Plaintiff's claims for long term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 5-2(e)).

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq*., and the subject disability benefit plans constitutes a "plan under ERISA."

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2569.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

4. In this case, the avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

5. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

**PARTIES**

6. Plaintiff, Harriet Hampton (hereinafter "Plaintiff" or "Ms. Hampton"), was at all relevant times, a resident of the City Chattanooga, County of Hamilton, State of Tennessee.

7. The Plaintiff was employed by Dufresne Spencer Group, LLC, at all relevant times.

8. Plaintiff alleges upon information and belief that the Group Long Term Disability Insurance for Employees of Dufresne Spencer Group, LLC (hereinafter "Plan") is, and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA.

9. The Plan provides eligible employees with disability income protection as defined by the Plan.

10. Plaintiff alleges upon information and belief that Dufresne Spencer Group, LLC, is the Plan Sponsor and Plan Administrator of the long-term disability Plan.

11. The Lincoln National Life Insurance Company (hereinafter "Lincoln") is the underwriter for Group Policy Number 000010224018.

12. Lincoln is the party obligated to pay benefits and to determine eligibility for benefits under Group Policy Number 000010224018 and the Plan.

13. Lincoln National Life Insurance Company (hereinafter "Lincoln") is an insurance company authorized to transact the business of insurance in this State, and may be served with process by and through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243.

## **FACTS**

14. Defendant Lincoln was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan.

15. The long-term disability Plan is fully insured by Lincoln under Group Policy Number 000010224018.

16. The Plaintiff timely filed an application for benefits under the Plan, was

subsequently denied benefits, Plaintiff timely appealed, and Lincoln issued its final denial on September 9, 2021.

17. The Plaintiff was employed as a Furniture Salesperson for Dufresne Spencer Group, LLC, and as such, Plaintiff was thereby a participant or beneficiary of the Plan, and is covered by the policy that provides benefits under the Plan.

18. The Plaintiff ceased work on or about May 18, 2018, due to a disability while covered under the Plan.

19. The Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

20. In accordance with the review procedures set forth in the Plan, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required plan appeals.

21. Having submitted her appeal, and as confirmed by Lincoln, Plaintiff exhausted her administrative remedies.

22. Based on the terms of the insurance policy, Plaintiff's complaint is timely and is not otherwise time barred.

23. The relevant long-term disability policy in this matter initially defines total disability as an inability to perform the main duties of her own occupation, and then, after 24 months of eligibility, the policy defines total disability as

an inability to perform the main duties of any occupation which her training, education or experience will reasonably allow.

24. Plaintiff is entitled to long term disability benefits as she has met the long-term disability Plan's requirements, and her disability continues to prevent her from performing the main duties of her own occupation as well as the main duties of any occupation which her training, education or experience will reasonably allow.

25. If disabled pursuant to the terms of the policy, Plaintiff, who was paid long-term disability benefits from September 4, 2018 through September 4, 2020, is entitled to a monthly gross long-term disability benefit of $3,549.28, offset by a monthly Social Security disability benefit of $1,095.00 (there are no auxiliary beneficiaries), for a net monthly long-term disability benefit of $2,454.28, from September 5, 2020 to June 25, 2033, such that she is owed $68,950.44 in back benefits, $253,406.47 in future benefits (using 4.0 % to discount to net present value), with the overpayment already repaid, for a total long-term disability benefit of $322,356.91.

26. Plaintiff submitted evidence to Lincoln supporting her disability. Plaintiff demonstrated to Lincoln that her medical condition includes reports of leg pain and swelling due to recurrent deep vein thrombosis (DVT) (blood clot)

treated with long-term anti-coagulation, shortness of breath, and weakness due to pulmonary embolism (blood clot in the lung). Additional diagnoses including chronic obstructive pulmonary disorder (COPD) (inflammatory lung disease causing obstructive airflow from the lungs), obstructive sleep apnea (OSA) (intermittent air flow blockage while sleeping), hypersomnia, periodic limb movement disorder, coronary artery disease (CAD) (damage/disease to the heart), congestive heart failure, lymphedema (excessive fluid buildup in the lymphatic tissue) in the legs, type 2 diabetes, Factor V Leiden (blood clotting disorder), high blood pressure, depression, anxiety, bipolar disorder, and morbid obesity with alveolar hypoventilation.

27. Plaintiff gave Lincoln documents indicating that on May 18, 2017, September 27, 0217, September 29, 2017, and October 1, 2017, she was seen and/or admitted at Parkridge East Hospital for lower extremity swelling and DVT. The documents additionally indicated Plaintiff was seen at Memorial Hospital on August 4, 2018 due to extreme swelling in her feet and legs. Furthermore, the documents demonstrated that Plaintiff went to Parkridge East Hospital the following day on August 5, 2018 complaining of swelling in her right knee and lower extremity and it was documented that she had bilateral leg swelling.

28. The Plaintiff provided Lincoln with documents showing that her treating

providers advised her to alternate between sitting and standing and that she needs to elevate her feet when seated due to lymphedema in her legs. The documents also showed that Plaintiff has had this restriction in place since she was last employed in May of 2018.

29. Plaintiff presented Lincoln with documents demonstrating that on August 23, 2018, she was treated by Vanderbilt Hospital and advised to wear compression stockings and elevate her legs due to lymphedema and recurrent DVT. The documents also showed that Siskin Spine & Rehabilitation evaluated Plaintiff on October 30, 2018 for lymphedema and recommended that she wear compression stockings.

30. Plaintiff supplied Lincoln with documents indicating that in January 2019, Gregory Sutton, M.D., completed a range of motion form. He noted loss of range of motion in the cervical spine, dorsolumbar spine, bilateral should, bilateral elbows, bilateral hands and fingers, bilateral hips, bilateral knees, bilateral ankles, and bilateral wrists. Dr. Sutton also indicated Plaintiff was "unstable" and "wheelchair bound."

31. Plaintiff submitted to Lincoln a document, dated December 27, 2019, in which Siskin Hospital for Physical Rehabilitation performed a detailed functional assessment which demonstrated the need for Plaintiff to frequently alternate between sitting and standing, the need for her to have

the frequent opportunity to elevate her feet when sitting, she had a maximal tolerated duration of standing for 11 minutes and 8 seconds, and a maximal tolerated duration of sitting of 24 minutes and 19 seconds. Her maximal tolerated duration of walking was 2 minutes and 25 seconds. Her lifting abilities were less than sedentary and she had poor tolerance with dexterity.

32. Plaintiff gave Lincoln a physical residual functional capacity assessment from Cheryl Giest, CWCE, at Siskin Hospital for Physical Rehabilitation, dated January 2, 2020, which provided restrictions and limitations including occasional lifting or carrying less than 10 pounds; standing or walking less than 2 hours per day; must periodically alternate sit/stand to relieve pain or discomfort; occasionally balance; never climb, stoop, kneel, crouch, or crawl; and limitations of fine, gross manipulation, reaching, and feeling with lower extremities.

33. Plaintiff provided Lincoln with a February 5, 2020 decision from Social Security Administrative Law Judge Benedict, where Judge Benedict noted in her fully favorable decision that Plaintiff was disabled as of August 3, 2018, with an entitlement to disability benefits date of February 2019 because, *inter alia*, she must elevate legs to at least waist height at unpredictable intervals throughout the day and, therefore, there are no jobs that exist in significant numbers in the national economy that Plaintiff can

perform, such that she is disabled from any gainful occupation or employment.

34. Plaintiff presented Lincoln with a document dated November 23, 2020, in which Synthia Beeler, M.D., indicated Plaintiff should avoid standing still for long periods of time and should be allowed to elevate her legs to promote blood flow as she has a history of DVT in the left lower extremity as well as pulmonary embolus.

35. Plaintiff supplied Lincoln with documents showing that on June 24, 2021, she was prescribed a wheelchair and a walker to help her with her mobility due to lymphedema.

36. Plaintiff submitted to Lincoln a July 7, 2021 left knee MRI which demonstrated the Plaintiff suffered from a medial meniscus posterior horn complete radial tear, adjacent meniscocapsular disruption, focal posterior tibia cartilage loss with acute subchondral marrow edema and partially extruded medial meniscal body, chronic patellofemoral chondral/degenerative changes, and small knee joint effusion. Plaintiff was eventually was put into orthotic boots which caused wounds to her bilateral lower extremities requiring continuing wound care. Plaintiff now wears leg pumps or intermittent pneumatic compression devices, on both legs.

37. Job preclusive vocational limitations include, *inter alia*, needing additional, unscheduled work breaks, chronic absenteeism, and being off task more than 10% of the work period. *Johnson v. Saul*, 2019 WL 6876012, at *3 (E.D. Mo., 2019); *Ricardo C. v. Saul*, 2019 WL 4034484, at *2 (N.D. Ill., 2019); *Hicks v. Commissioner of Social Security*, 2016 WL 2605234, at *4 (E.D. Mich., 2016); *Mershad v. Commissioner of Social Security*, 2016 WL 659307, at *12 (S.D. Ohio, 2016); *Coffman v. Commissioner of Social Security*, 2015 WL 9311522, at *3 (E.D. Mich., 2015); *Williams v. Commissioner of Social Sec.*, 2013 WL 3771381, at *6 (E.D. Mich., 2013).

38. An ability to perform the material and substantial duties of any fulltime occupation requires reliability, consistency, substantial capacity, psychological stability, and steady attendance. *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980); *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1236 (11th Cir. 2006); *McIntyre-Handy v. APAC Customer Services, Inc.*, 2005 WL 5369158, *6 (E.D. Va. 2005); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

39. Lincoln relied on medical consultants for file reviews during the administrative appeal of Plaintiff's disability claim and said consultants opined, *inter alia*, that Plaintiff had minor impairments which had no meaningful impact on her functionality without addressing her work

reliability, consistency, substantial capacity, and steady attendance and dismissed her subjective complaints.

40. Lincoln relied, *inter alia*, on third party vendors, including Exam Coordinators Network (Marvin Pietruszka, M.D.), to conduct medical file reviews during the administrative appeal of Ms. Hampton's disability claim.

41. Lincoln medical consultant Marvin Pietruszka, M.D., via Exam Coordinators Network, authored a February 10, 2020 report indicating the Plaintiff had few restrictions and could perform sedentary work.

42. Regarding Exam Coordinators Network, it is a subsidiary of Genex. In 2010, Genex bought the LINA's disability case management business. At one time Genex's website provided context for its "cost cutting" mission and the fact that it only serves the insurance industry: "For over 30 years, Genex has been the recognized industry leader for managing disabilities" and "Genex's Disability…Absence Management Services provide high-quality, customizable services driven by specialized disability management expertise to help payers reduce claims costs…" and "Specialized, customizable services delivered by in-house disability experts help you reduce claims costs…" *See*, *e.g.*, *Jones v. Life Insurance Company of North America*, Case No. 2:19-cv-04669-DLR (D. Ariz.). The conflict of interest is clear.

43. There are no challenges to Plaintiff's credibility. In other words, Ms. Hampton's treating physicians have directly addressed her reliability, consistency, substantial capacity, psychological stability, and steady attendance, and have provided limitations and restrictions which preclude competitive employment. Lincoln's medical consultant has failed to substantively account for, much less address, any of these issues. Lincoln's medical consultants also ignored or dismissed Plaintiff's pain and related complaints of fatigue and diminished concentration as subjective.

44. Ignoring evidence of pain or other disabling conditions because it is subjective is arbitrary and capricious. *Miles v. Prudential Life Insurance Co.*, 720 F.3d 472, 486 (2d Cir. 2013).

45. There is no requirement in the instant policy that Plaintiff provide *only* objective medical evidence or other objective indica of disability. Since the policy does not say it, Lincoln does not have the authority to require it. *See, e.g.*, 29 U.S.C. § 1104(a)(1)(d); *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S.Ct. 2459, 2468 (2014), *Salomaa v. Honda*, 642 F.3d 666, 678 (9th Cir. 2011); *Carradine v. Barnhart*, 360 F.3d 751,755 (7th Cir. 2004); *Abdullah v. Accentcare Long Term Disability Plan*, 2012 WL 4112291 *11 (N.D. Cal); *Krupp v. Liberty Life Assurance Company of Boston*, 936 F.Supp.2d 908, 917 (N.D. Ill. 2013).

46.The instant policy allows for independent medical examinations and functional capacity examinations. Lincoln failed to conduct any such examinations. All Lincoln's opinions come from file reviews. Non-examining evidence has little value in evaluating pain, fatigue or impaired focus, concentration, or cognition. *See*, *e.g.*, *Kalish v. Liberty Mutual*, 419 F. 3d 501, 508 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F. 3d 286, 295 (6th Cir. 2005); *Smith v. Aetna*, 312 F. Supp. 2d 942, 954 (S.D. Ohio 2004); *Meyer v. MetLife*, 341 F. Supp. 2d 865 (S.D. Ohio 2004); *Black v. Unum Life Insurance Company of America*, 324 F. Supp. 2d 206, 215 fn.8 (D. Me. 2004).

47.Lincoln's policy contained an "offset" provision that required Plaintiff to apply to the Social Security Administration for benefits (as the offset applies to benefits Plaintiff received or is eligible to receive). If she won her Social Security case, then not only are future benefits from Lincoln reduced by the amount of the monthly check from Social Security, but to the extent that any back benefits from Social Security overlap with benefits Lincoln has already paid, Lincoln gets to recoup these benefits from the Plaintiff. Plaintiff applied for and received her Social Security disability benefits.

48.The Plaintiff has now exhausted her required administrative remedies for her long-term disability benefits under the Plan pursuant to ERISA or such

administrative remedies are deemed exhausted and/or her long-term disability benefits are deemed denied.

49. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

50. The entity that chose to deny long term disability benefits would pay any such benefits due out of its own funds.

51. Defendant Lincoln was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

52. Defendant Lincoln allowed its concern over its own funds to influence its decision-making.

53. Defendant has acted under a policy to take advantage of the potential applicability of ERISA to claims.

54. Defendant's administrative process did not provide Plaintiff with a full and fair review; by way of example, its denial letters did not contain the specific reasons for the denial and did not advise Plaintiff of the information Defendant required in order to approve her continuing benefits.

55. The disability insurance policy does ***not*** provide Lincoln with discretionary authority.

56. In the alternative, relevant state law bans any such clause purporting to confer Lincoln with discretionary authority.

57. At all times relative hereto, Lincoln has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from Lincoln's own assets with each payment depleting those same assets.

58. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, Lincoln is an ERISA fiduciary.

59. Lincoln, as an ERISA fiduciary, will have to show it exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Plaintiff like that borne by a trustee under common law. *See* § 1002(21)(A)(i) and (iii); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220, 124 S. Ct. 2488, 2502 (2004); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.), *cert. denied*, 130 S. Ct. 200 (2009). Indeed, Liberty Life Assurance Company of Boston, now Lincoln, answered an ERISA complaint in *Ansari v. Liberty Life Assurance Company of Boston*, Case No.: 1:17-cv-4674-MHC (N.D. Ga. 2017). In paragraph 38 of its answer Lincoln admitted that as an ERISA fiduciary it must "carry out its duties with respect to the plan by placing the interests of the Plan and its participants ahead of its own."

60. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 59 of this complaint.

61. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

62. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 61 of this complaint.

63. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or continuation as well as that which tends to favor claim declination or termination.

64. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 63 of this complaint.

65. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and to resolve undeterminable issues in its insured's favor.

66. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 65 of this complaint.

67. Under ERISA, a fiduciary has the obligation to read, interpret and understand all the pertinent medical information with sufficient clarity so as

to be able to make a fair, objective and thorough evaluation of its insured's claims for disability benefits.

68. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 67 of this complaint.

69. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

70. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 69 of this complaint.

71. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

72. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 71 of this complaint.

73. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

74. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 73 of this complaint.

75. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

76. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 75 of this complaint.

77. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

78. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 77 of this complaint.

79. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

80. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 79 of this complaint.

81. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

82. Lincoln failed to satisfy its duties under ERISA as specified in paragraph 81 of this complaint.

## CAUSE OF ACTION
## FOR PLAN BENEFITS AGAINST ALL DEFENDANTS
## PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

**PLAINTIFF** incorporates all the allegations contained in paragraphs 1 through 82 as if fully stated herein and says further that:

83. Under the terms of the Plan, Defendant agreed to provide Plaintiff with long term disability benefits if Plaintiff became disabled as defined in the Plan.

84. Plaintiff is disabled under the terms of the Plan.

85. Defendant failed to provide benefits due under the Plan, and this denial of benefits to Plaintiff constitutes a breach of the Plan.

86. The decision to deny benefits was wrong under the terms of the Plan.

87. The decision to deny benefits and decision-making process were arbitrary and capricious.

88. The decision to deny benefits was not supported by substantial evidence in the record.

89. The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

90. The appellate procedures did not provide the Plaintiff a full and fair review.

91. As an ERISA fiduciary, the Defendant owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

92. The Defendant violated the fiduciary duties owed to the Plaintiff.

93. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability and in failing to provide a full and fair review of the decision to deny benefits, Plaintiff has been damaged in the amount equal to the amount of benefits to which Plaintiff would have been entitled to under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan.

94. As a direct and proximate result of the conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court grant her the following relief in this case:

1. A finding in favor of Plaintiff against Defendant;
2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);
3. Prejudgment and postjudgment interest;

4. An Order requiring Defendant to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan;
5. Plaintiff's reasonable attorney fees and costs; and,
6. Such other relief as this Court deems just and proper.

Dated this 2nd day of December, 2022.

BY: */s/ D. Seth Holliday*
D. SETH HOLLIDAY, ESQ.
TN Bar No. 023136
**MCMAHAN LAW FIRM, LLC**
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118
sholliday@mcmahanfirm.com
*Attorneys for Plaintiff*