**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| HARRIET HAMPTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: |
| | § | 1:22-cv-00306-DCLC-CHS |
| | § | |
| THE LINCOLN NATIONAL LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S MOTION FOR DISCOVERY

Plaintiff, Harriet Hampton ("Plaintiff"), by and through her undersigned counsel, and pursuant to the Court's Scheduling Order (Dkt. No. 13), and Rule 26 and 37 of the Federal Rules of Civil Procedure, hereby files her Motion for Discovery against the Defendant, The Lincoln National Life Insurance Company ("Lincoln"), and as grounds states as follows:

### Statement of the Case

Plaintiff's claim proceeds pursuant to 29 U.S.C. § 1132 (a)(1)(B) under the theory that Defendant Lincoln improperly denied Plaintiff's long term disability benefits under an ERISA-governed insurance policy.

On April 27, 2023, Plaintiff issued conflict of interest discovery to Lincoln. Exhibit 1. On June 30, 2023, Plaintiff received Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents. Exhibit 2. Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, before seeking the Court's intervention in this matter, on July 12, 2023, Plaintiff sent Lincoln a letter to determine if the parties could resolve this issue or whether an impasse has been reached. Exhibit 3. Lincoln did not substantively respond to Plaintiff's July 12, 2023, letter.

In its June 30, 2023, objections and responses, Lincoln indicated that in the Court's Order (Dkt. No. 13) that set the briefing schedule in this case, the Court stated that, "The partis shall file any motions for discovery before July 25, 2023." Exhibit 2. Lincoln read this language as requiring a party to seek leave through a ruling on a motion for discovery prior to serving any discovery. While Plaintiff agreed the language could be read in this manner, Plaintiff indicated it could also be read as the deadline for Plaintiff's motion to compel. However, because the parties were required to confer and resolve any discovery issues before seeking the Court's intervention, Plaintiff suggested that the parties use the propounded discovery and objections as an opportunity to discuss the issues and to streamline any remaining dispute for the Court's resolution. As the dialogue terminated with

the Plaintiff's July 12, 2023, letter, and because the parties disagreed as to the appropriate motion for relief, Plaintiff has, styled this motion as a "Motion for Discovery" instead of a "Motion to Compel."

**<u>Standard for a Motion for Discovery</u>**

Initially, it should be noted that in *Kinsler v. Lincoln Nat'l Life Ins. Co.*, 660 F.Supp.2d 830, 831 (M.D. Tenn. 2008), the court allowed discovery identical to the case at bar against this very Defendant. Second, Rule 26(b) of the Federal Rules of Civil Procedure defines the scope of discovery as including "any matter, not privileged, that is relevant to the claim or defense of any party." The Supreme Court has noted that courts should favor access to discovery materials, as mutual knowledge of all relevant facts gathered by parties is essential to proper litigation. See *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)

Here, Plaintiff's Requests for Production and Interrogatories were fashioned in large part after *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350, 171 L. Ed. 2d 299 (2008), that held that 1) conflict of interest is a factor to be considered in determining whether a claim decision is lawful under ERISA and 2) that because conflicts "vary in kind and degrees of seriousness", the precise weight to affix to the conflict depends on the circumstances of each case. *Id*. Indeed,

*Glenn* has charged plaintiffs to seek out information regarding conflicted fiduciaries.

More specifically, *Glenn* stated that District Courts reviewing denials of ERISA claims under the arbitrary and capricious standard of review must consider the potential impact of conflict of interest, and that is best done through discovery. *Glenn*, 554 U.S. at 116; see also *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 293 n.2 (6th Cir. 2005) (stating that the "Court would have a better feel for the weight to accord [the administrator's] conflict of interest if Calvert had explored the issue through discovery."). *See Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444, 450 (7th Cir. 2009), remanding to the District Court for failure to consider impact of conflict of interest and potential bias. The *Raybourne* Court noted that "In the wake of *Glenn*, other circuits have not hesitated to remand cases so that district courts may consider the impact of a structural conflict in the first instance." *Id*. (citing cases from the 1st, 8th, and 9th Circuit Courts of Appeals).

The Sixth Circuit follows *Glenn's* admonition. A district court's review of an ERISA-based claim typically is limited to the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). However, Sixth Circuit precedent makes clear that discovery is available beyond the administrative record in an ERISA case when it "is necessary to resolve an ERISA claimant's

procedural challenge." *Id.* at 618. Two examples of such procedural challenges necessitating discovery are "an alleged lack of due process…or alleged bias." *Id.* Such bias can occur "[w]hen the same entity determines eligibility for benefits and also pays those benefits out of its own pocket, an inherent conflict of interest arises." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009) (citing *Metro. Life Insurance Co. v. Glenn*, 554 U.S. 105, 108 (2008)). Here Plaintiff alleges (and Lincoln does not dispute) that Lincoln both determined whether Plaintiff was eligible for benefits and paid those benefits from its own funds. Dkt. No. 10, ¶¶ 11-13, 15, 50-51.

Based on this inherent conflict, Plaintiff may conduct some discovery to enable the Court to determine whether such conflict affected Lincoln's benefit decisions. *Busch v. Hartford Life & Acc. Ins. Co.*, No. 5:10-00111-KKC, 2010 WL 3842367 (E.D. Ky. Sept. 27, 2010) (citing *Hays v. Provident Life & Acc. Ins. Co.*, 623 F. Supp. 2d 840 (E.D. Ky. 2008)). The scope of discovery, however, will be limited to the conflict of interest or any allegations of bias. *Id.* at *3 (citing *McQueen v. Life Ins. Co. of N. Am.*, 595 F. Supp. 2d 752, 755 (E.D. Ky. 2009)).

Plaintiff recognizes there are unpublished Sixth Circuit cases which indicate that such discovery inquiries much be predicated upon a plaintiff's providing a "factual foundation" showing that claims of bias are more than mere allegations.

*See Guest-Marcotte v. Life Ins. Co. of N. Am.*, 730 F. App'x 292, 304 (6th Cir. 2018); *Collins v. Unum Life Ins. Co. of Am.*, 682 F. App'x 381, 389 (6th Cir. 2017); *Johnson v. Connecticut Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009). However, even these cases note that plaintiffs are not required to meet any specific evidentiary threshold showing to obtain such discovery. *See Johnson*, 324 F. App'x at 467 (and cases discussed therein); *see also McLaren v. Trustee of Grp. Ins. Trust*, 1:16-cv-1164, 2017 WL 4417704, at *3 (S.D. Ohio 2017). Notably, these unpublished cases hold no precedential value. Still, in the instant matter Plaintiff has met even this higher burden.

## **Law and Argument**

Plaintiff's allegations and evidence suggest that Lincoln's review might have been limited only to evidence supporting its decision to deny benefits. While Lincoln certainly disputes this, "[p]lan administrators may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); see *Niswonger v. PNC Bank Corp. & Affiliates Long Term Disability Plan*, 612 F. App'x 317, 321 (6th Cir. 2015). Plaintiff provided Lincoln with the strong opinions of Gregory Sutton, M.D., and Synthia Beeler, M.D., as well as a decision from

Social Security Administrative Law Judge Benedict granting disability benefits, along with a physical residual functional capacity assessment from Cheryl Giest, CWCE, at Siskin Hospital for Physical Rehabilitation, which provided restrictions precluding competitive employment. Their opinions, if credited, directly conflict with Lincoln's reasons for denying Plaintiff's benefit application.

Such evidence goes to substantive merits of Plaintiff's ERISA claims, and to this extent, it does not provide grounds for allowing Plaintiff to seek discovery regarding the substantive merits of her claim. *See Charlie Duncan, Executor of the Estate of Paul W. McVay v. Minnesota Life Insurance Company*, 2018 WL 306609, at *3 (S.D. Ohio 2018). However, the presence of this evidence and the possibility that Lincoln ignored Plaintiff's treating opinions due to its conflict-of-interest point to potential procedural problems with Lincoln's decisional process that may be explored during discovery. *Id.* Lincoln, as an ERISA fiduciary, must ensure that in its decisional process it exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Plaintiff like that borne by a trustee under common law. *See* Complaint (Dkt. No. 1) paragraph 59; § 1002(21)(A)(i) and (iii); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220, 124 S. Ct. 2488, 2502 (2004); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.), *cert. denied*, 130 S. Ct. 200 (2009). Indeed, Liberty Life Assurance Company of Boston, now Lincoln,

answered an ERISA complaint in *Ansari v. Liberty Life Assurance Company of Boston*, Case No.: 1:17-cv-4674-MHC (N.D. Ga. 2017). In paragraph 38 of its answer Lincoln admitted that as an ERISA fiduciary it must "carry out its duties with respect to the plan by placing the interests of the Plan and its participants ahead of its own." Exhibit 4. The strength of Plaintiff's medical case will be discussed later in this correspondence and will show that Lincoln has fallen short of the duties articulated in its own admission.

Plaintiff also provided evidence of conflict of interest in her complaint. For example, in paragraph 40 of the Complaint (Dkt. No. 1), Plaintiff noted that Lincoln relied, *inter alia*, on third party vendors, including Exam Coordinators Network (Marvin Pietruszka, M.D.), to conduct medical file reviews during the administrative appeal of Ms. Hampton's disability claim. In paragraph 42 of the Complaint, Plaintiff indicated that Exam Coordinators Network is a subsidiary of Genex. Plaintiff noted that in 2010, Genex bought LINA's disability case management business. At one time Genex's website provided context for its "cost cutting" mission and the fact that it only serves the insurance industry: "For over 30 years, Genex has been the recognized industry leader for managing disabilities" and "Genex's Disability…Absence Management Services provide high-quality, customizable services driven by specialized disability management expertise to

help payers reduce claims costs…" and "Specialized, customizable services delivered by in-house disability experts help you reduce claims costs…" *See, e.g.*, *Jones v. Life Insurance Company of North America*, Case No. 2:19-cv-04669-DLR (D. Ariz.). The conflict of interest is clear.

Additionally, there is ample evidence outside of the administrative record cataloguing Lincoln's conflict of interest. For example, various state insurance departments have performed market conduct studies of Lincoln which demonstrated behavior antithetical to its role as an ERISA fiduciary. A 2017 California Lincoln Market Conduct Study detailed Lincoln's deceptive claims practices including its failure to provide thorough, fair, and objective investigations, as well as its failure to clarify functionality using IMEs and FCEs. Exhibit 5. A 2019 Illinois Lincoln Market Conduct Study addressed ERISA violations including Lincoln's failure to timely decide appeals. Exhibit 6. And a 2019 Connecticut Lincoln Market Conduct Study disciplined Lincoln with a $65,000.00 fine for lost records in disability claims and its repeated failure to pay proper interest in individual life and annuity claims. Exhibit 7. Additionally, various employees of Lincoln have been deposed about how ERISA LTD claims are handled. For example, in *Hall v. Lincoln Nat'l Life Ins. Co.*, Case No. 5:12-cv-01911 (C.D. Cal. 2012), the deposition of Lisa Kurtz, an ERISA LTD appeals

specialist, proceeded on April 12, 2013. Exhibit 8. Ms. Kurtz admitted she defers entirely to Lincoln's medical and vocational specialist's reports without questioning their reasoning, their credentials, or their bias. *Id.*, Kurtz depo at 67:9-25, 68:1-25, 69:1-9. Moreover, she will not give an award of Social Security disability benefits any significant consideration because she has no understanding of how the Social Security Administration makes its decision and has not been trained by Lincoln on this issue. *Id.* at 78:6-25, 108:16-18, 115:10-16, 22-24, 127:1-14, 144:16-25, 145:1.

Through interrogatory requests and requests for production, the Plaintiff, Ms. Hampton, has requested information regarding pay, bonuses, and other financial information related to the employees and vendors of Lincoln who worked on her claim. Exhibit 1. Lincoln objected to providing most of this information, in part based on its contention that the requests were not overly burdensome, not relevant nor reasonably calculated to lead to the discovery of admissible evidence, overly broad, and sought highly sensitive and confidential business information. Exhibit 2. Additionally, in any litigation, Plaintiff would anticipate that Lincoln would further argue that the inquiries were not proportional, and expensive with which to comply. Lincoln is mistaken.

Courts within the Sixth Circuit's jurisdiction have routinely permitted such discovery in conflict-of-interest cases. *See McQueen*, 595 F. Supp. 2d at 755-56; *See also Hatfield v. Life Ins. Co. of N.A.*, No. 5: 14-432-DCR, 2015 WL 5722791, at *5 (E.D. Ky. Sept. 29, 2015) (plaintiff was allowed to obtain statistical evidence going back 10 years for individuals and entities who handled the plaintiff's most recent denial and appeal); *Pemberton v. Reliance Standard Life Ins. Co.*, No. 08-086-JBC, 2009 WL 89696, at *2 (E.D. Ky. Jan. 13, 2009) (same); *Knox v. Prudential Ins. Co. of Am.*, 2014 U.S. Dist. LEXIS 42897 (W.D. Ky. March 31, 2014) (allowing discovery along the lines of that described in *Pemberton*, stating that "Such discovery is important to enable the court to evaluate under *Glenn* whether the conflict of interest or bias resulted in an abuse of discretion."). A defendant's failure to maintain statistical information concerning its rate of claim denials is not a reason to preclude discovery of this information. *Aliff v. Prudential Ins. Co. of Am.*, 2019 WL 4197211, at *5 (E.D. Ky. Sept. 4, 2019). Indeed, the District Court for the Eastern District of Tennessee has allowed for far greater ERISA discovery than requested in the instant matter. *See Sandeen v. The Paul Revere Life Ins. Co. et al.*, Case No. 1:18-cv-00248-JRG-CHS, Dkt. No. 92 (E.D. Tenn 2018) (granting a four-hour deposition of director who denied claim as well

as written discovery attached to plaintiff's original motion) (Exhibit 9)[1]; *see also Proffitt v. MetLife, et al.*, Case No. 3:14-cv-1576, Dkt. No. 61 (M.D. Tenn 2014) (granting discovery into MetLife's incentive or bonus systems for employees) (Exhibit 11); and *Kinsler v. Lincoln Nat'l Life Ins. Co.*, 660 F.Supp.2d 830, 831 (M.D. Tenn. 2008) (allowing discovery identical to the case at bar against Lincoln).

The ERISA regulations also mandate that claimants be provided with "all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-(h)(2)(iii). Among the documents, records, and information defined as "relevant" are those: "relied upon in making the benefit determination"; "submitted, considered, or generated in the course of making the benefit determination, without regard to whether [they were] relied upon in making the benefit determination"; and those that "demonstrates compliance with the administrative processes and safeguards". 29 C.F.R. § 2560.503-l(m)(S).

In other words, Plaintiff's discovery requests are relevant, proportional, and do not run afoul of Sixth Circuit precedent. As to whether the requests are cost prohibitive to answer, the undersigned routinely sees insurance companies providing the information sought in the instant matter with no complaint as to

[1] The original order was sealed. The order unsealing the original order is attached at Exhibit 10.

expense because they specifically track this information. This has been true for a long time. For example, in *Smith v. Hartford Life & Accident Ins. Co.*, Civil Action No. 1:05-CV-287-SJD (S.D. Ohio 2005), an ERISA long-term disability matter, Hartford answered interrogatories regarding information on claims referred to University Disability Consortium ("UDC") and payments made by Hartford to UDC. Exhibit 12. Hartford provided the following information: in 2002, Hartford referred 1,425 claims to UDC for review and paid UDC $1,379,860.00 for services; in 2003, Hartford referred 1,575 claims to UDC and paid UDC $1,807,054.00; and in 2004, Hartford referred 2,185 claims to UDC and paid UDC $2,781,328.00. *Id*. In another example, in *Jacoby v. Hartford Life & Accident Ins. Co.*, Civil Action No.: 07-CV-4627-LAK-RLE (S.D.N.Y. 2007), an ERISA disability matter, Hartford again answered interrogatories regarding information on claims referred to UDC and payments made by Hartford to UDC. Exhibit 13. Hartford provided the following information: in 2005, Hartford referred 2,517 claims to UDC and paid UDC $3,558,187.00 for services; in 2006 Hartford referred 1,774 claims to UDC and paid UDC $2,515,168.00; and in 2007 Hartford referred 893 claims to UDC and paid UDC $1,272,128.00. *Id*. In yet another example, in *Epstein v. Hartford Accident & Life Ins. Co.*, Civil Action No.: 09-CV-5608-WHP (S.D.N.Y. 2009), Hartford again answered interrogatories regarding

information on claims referred to UDC and payments made by Hartford to UDC. Exhibit 14. Hartford provided the following information: in 2008 Hartford referred 847 claims to UDC and paid UDC $1,235,995.00. *Id.* Such discovery answers in ERISA cases are not unique to Hartford.

Lincoln has also indicated that some of the documents requested by Plaintiff concern highly sensitive or confidential business information and that the Plaintiff has not provided a sufficient showing of need to override privacy issues. Exhibit 2. These objections are also without merit. Rule 26(c)(1)(G) of the F.R.C.P. provides in relevant part:

> A party or any person from whom discovery is sought may move for a protective order. . .The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including. . .requiring that a trade secret or other confidential research, development, or commercial information may not be revealed or be revealed only in a specified way…

In other words, it would be Lincoln's burden to identify any document responsive to a discovery request by the Plaintiff and then to show "good cause" under F.R.C.P. 26(c) as to why that document should be designated confidential and proprietary. Once that analysis is complete, and if it were found to be in Lincoln's favor, then the issue of an appropriate protective order to govern the production of the documents would arise and which would resolve any alleged privacy issues. On July 12, 2023, Plaintiff sent Lincoln a proposed protective order to govern the

disclosure of any documents appropriately designated as confidential. Exhibit 15. In any case, Lincoln would still have to turn over any relevant documents.

Significantly, it is not the Plaintiff's obligation to provide a sufficient showing of need for "confidential and proprietary" materials with respect to privacy concerns. Indeed, even if Lincoln attempts such a showing, there are numerous state and federal cases holding that a showing of specific harm is required before a protective order should be issued.[2]

[2] "When confidential commercial information is involved, this standard requires a showing that disclosure will result in a clearly defined and very serious injury to the company's business, *United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.C.1981), or, stated differently, great competitive disadvantage and irreparable harm. *Essex Wire Corp. v. Eastern Electric Sales Co.*, 48 F.R.D. 308, 310 (E.D. Pa.1969)." *Loveall v. American Honda Motor Co., Inc.*, 694 S.W.2d 937, 939-940 (Tenn 1985); "To make a showing of good cause, the party seeking confidentiality has the burden of showing the injury 'with specificity.'" *Pearson v. Miller*, 211 F.3d 57, 72 (3rd Cir. 2000); "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) [good cause] test." *Beckman Indus. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992); "FRCP allows the sealing of court papers only for 'good cause shown'… To meet this burden, courts traditionally require that the party wishing to have confidential information in the court record kept under seal show that disclosure of the information would result in some sort of serious competitive or financial harm." *Tinman v. Blue Cross & Blue Shield of Michigan*, 176 F. Supp. 2d 743, 745 (E.D. Mich. 2001); "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity … Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause

To reiterate, Plaintiff's allegations and evidence suggest that Lincoln's review was limited only to evidence supporting its decision to deny benefits. "Plan administrators may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); see *Niswonger v. PNC Bank Corp. & Affiliates Long Term Disability Plan*, 612 F. App'x 317, 321 (6th Cir. 2015). This is precisely what Lincoln did.

In her Complaint at paragraphs 26-36, Plaintiff catalogued the evidence she submitted to Lincoln supporting her disability. Plaintiff demonstrated to Lincoln that her medical condition includes reports of leg pain and swelling due to recurrent deep vein thrombosis (DVT) (blood clot) treated with long-term anti-coagulation, shortness of breath, and weakness due to pulmonary embolism (blood clot in the lung). Additional diagnoses included chronic obstructive pulmonary disorder (COPD) (inflammatory lung disease causing obstructive airflow from the lungs), obstructive sleep apnea (OSA) (intermittent air flow blockage while sleeping), hypersomnia, periodic limb movement disorder, coronary artery disease

---

showing." *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 175 (E.D. Pa. 2004).

(CAD) (damage/disease to the heart), congestive heart failure, lymphedema (excessive fluid buildup in the lymphatic tissue) in the legs, type 2 diabetes, Factor V Leiden (blood clotting disorder), high blood pressure, depression, anxiety, bipolar disorder, and morbid obesity with alveolar hypoventilation.

On May 18, 2017, September 27, 2017, September 29, 2017, and October 1, 2017, Plaintiff was seen and/or admitted at Parkridge East Hospital for lower extremity swelling and DVT. She was seen at Memorial Hospital on August 4, 2018, due to extreme swelling in her feet and legs. Plaintiff then went to Parkridge East Hospital the following day on August 5, 2018, complaining of swelling in her right knee and lower extremity and it was documented that she had bilateral leg swelling.

Plaintiff's treating providers advised her to alternate between sitting and standing and that she needs to elevate her feet when seated due to lymphedema in her legs. Plaintiff has had this restriction in place since she was last employed in May of 2018. On August 23, 2018, she was treated by Vanderbilt Hospital and advised to wear compression stockings and elevate her legs due to lymphedema and recurrent DVT. Siskin Spine & Rehabilitation evaluated Plaintiff on October 30, 2018, for lymphedema and recommended that she wear compression stockings. In January 2019, Gregory Sutton, M.D., completed a range of motion form. The

physician noted loss of range of motion in the cervical spine, dorsolumbar spine, bilateral should, bilateral elbows, bilateral hands and fingers, bilateral hips, bilateral knees, bilateral ankles, and bilateral wrists. Dr. Sutton also indicated Plaintiff was "unstable" and "wheelchair bound."

On December 27, 2019, Siskin Hospital for Physical Rehabilitation performed a detailed functional assessment which demonstrated the need for Plaintiff to frequently alternate between sitting and standing, the need for her to have the frequent opportunity to elevate her feet when sitting, she had a maximal tolerated duration of standing for 11 minutes and 8 seconds, and a maximal tolerated duration of sitting of 24 minutes and 19 seconds. Her maximum tolerated duration of walking was 2 minutes and 25 seconds. Her lifting abilities were less than sedentary, and she had poor tolerance with dexterity.

Plaintiff underwent a physical residual functional capacity assessment by Cheryl Giest, CWCE, at Siskin Hospital for Physical Rehabilitation, dated January 2, 2020. Giest provided restrictions and limitations including occasional lifting or carrying less than 10 pounds; standing or walking less than 2 hours per day; must periodically alternate sit/stand to relieve pain or discomfort; occasionally balance; never climb, stoop, kneel, crouch, or crawl; and limitations of fine, gross manipulation, reaching, and feeling with lower extremities.

On February 5, 2020, Social Security Administrative Law Judge Benedict issued a decision finding that Plaintiff was disabled as of August 3, 2018, with an entitlement to disability benefits date of February 2019. The ALJ made this decision because, *inter alia*, Plaintiff must elevate legs to at least waist height at unpredictable intervals throughout the day and, therefore, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform, such that she is disabled from any gainful occupation or employment. On November 23, 2020, Synthia Beeler, M.D., indicated Plaintiff should avoid standing still for long periods of time and should be allowed to elevate her legs to promote blood flow as she has a history of DVT in the left lower extremity as well as pulmonary embolus. On June 24, 2021, Plaintiff was prescribed a wheelchair and a walker to help her with her mobility due to lymphedema. On July 7, 2021, a left knee MRI demonstrated the Plaintiff suffered from a medial meniscus posterior horn complete radial tear, adjacent meniscocapsular disruption, focal posterior tibia cartilage loss with acute subchondral marrow edema and partially extruded medial meniscal body, chronic patellofemoral chondral/degenerative changes, and small knee joint effusion. She was eventually put into orthotic boots which caused wounds to her bilateral lower extremities requiring continuing wound care.

Plaintiff now wears leg pumps or intermittent pneumatic compression devices, on both legs.

**Conclusion**

In summary, the Plaintiff initially agrees that the Court's review is limited to a review of the administrative record before the claim decision-maker at the time the decision to deny benefits was made. However, discovery is permitted to address violations of due process on the part of the decision-maker. Plaintiff acknowledges that the record is closed with respect to additional evidence of disability. However, Sixth Circuit precedent allows limited discovery and the Court's consideration of evidence of bias or violation of due process on the part of the decision-maker.

Accordingly, the Plaintiff respectfully requests that the Court issue an Order granting Plaintiff's Motion for Discovery and requiring Defendant to answer the discovery inquiries attached as <u>Exhibit 1</u>.

////

////

////

////

Respectfully submitted,

<u>*/s/ D. Seth Holliday*</u>
D. SETH HOLLIDAY, ESQ.
TN Bar No. 023136
**MCMAHAN LAW FIRM, LLC**
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118
sholliday@mcmahanfirm.com
*Attorneys for Plaintiff*

## RULE 37(a)(1) CERTIFICATION

The undersigned hereby certifies that he, the movant, has in good faith conferred or attempted to confer with Defense Counsel in an effort to obtain the discovery materials specified in Exhibit 1 without court action.

*/s D. Seth Holliday*
D. Seth Holliday

## CERTIFICATE OF SERVICE

This is to certify that on this 25th day of July, I have served a copy of the foregoing Motion for Discovery upon counsel for all other parties in this action via the CM/ECF system, electronic mail and/or depositing a copy of the same in the United States Mail, via certified mail, return receipt requested or regular mail, with sufficient postage affixed thereto to ensure delivery upon:

Iwana Rademaekers
Law Offices of Iwana Rademaekers, P.C.
17304 Preston Road, Suite 800
Dallas, Texas 75252
iwana@rademaekerslaw.com

By: */s/D. Seth Holliday*
D. Seth Holliday