# Market Conduct Report

The Lincoln National Life Insurance Company
Lincoln Life & Annuity Company of New York
First Penn-Pacific Life Insurance Company

November 15, 2019

Connecticut Insurance Department

Case 1:22-cv-00306-DCLC-CHS Document 20-7 Filed 07/25/23 Page 1 of 26 PageID #: 10037

## TABLE OF CONTENTS


I. Introduction ........................................................................1

II. Scope of Examination ............................................................. 1

III. Company Profile ..................................................................... 1

IV. Agency Organization ..................................................................2

V. Records Selected for Review ......................................................2

VI. Producer Licensing and Appointment .........................................3

VII. Underwriting and Rating ............................................................5

VIII. Policyholder Service ....................................................................8

IX. Marketing and Sales....................................................................10

X. Complaints ..................................................................................12

XI. Claims .........................................................................................13

XII. Company Operations ..................................................................17

XIII. Summary of Recommendations...................................................20

XIV. Acknowledgment .........................................................................21

The Lincoln National Life Insurance Company
Lincoln Life & Annuity Company of New York
First Penn-Pacific Life Insurance Company

## I. INTRODUCTION

An examination of The Lincoln National Life Insurance Company, Lincoln Life & Annuity Company of New York and First Penn-Pacific Life Insurance Company (hereinafter referred to as the "Companies") were conducted by Market Conduct examiners of the State of Connecticut Insurance Department at the Department's offices.

## II. SCOPE OF EXAMINATION

From March 25, 2018 through August 8, 2019, the Market Conduct Division of the Connecticut Insurance Department examined the market conduct practices of the Companies using a sample period of January 1, 2015 through June 30, 2017. The examination was limited to Connecticut business.

The purpose of the examination was to evaluate the Companies' market conduct practices and treatment of policyholders in the State of Connecticut. The examinations focused on the solicitation of new business, marketing and sales, agent licensing and appointments, underwriting and rating, policyholder service, complaint handling, claim processing and company operations.

The market conduct examination was conducted pursuant to Connecticut Insurance Department policies and procedures and the standards proposed in the NAIC Market Regulation Handbook.

## III. COMPANY PROFILE

The market conduct examination included the review of The Lincoln National Life Insurance Company, Lincoln Life & Annuity Company of New York and First Penn-Pacific Life Insurance Company. Each Company is organized as a stock company. The Lincoln National Life Insurance Company was incorporated in 1905 and its principal place of business is Fort Wayne, Indiana. Lincoln Life & Annuity Company of New York was incorporated in 1897 and its principal place of business is in Syracuse, New York. First Penn-Pacific Life Insurance Company was incorporated in 1963 and its principal place of business is in Fort Wayne, Indiana. Each Company is licensed to write business in Connecticut.

The Lincoln National Life Insurance Company
Lincoln Life & Annuity Company of New York
First Penn-Pacific Life Insurance Company

Direct premiums written as of December 31, 2016 were as follows:

The Lincoln National Life Insurance Company

| | Connecticut | Total (All States) |
|---|---|---|
| Life | 136,758,659 | 4,949,158,393 |
| Annuity Considerations | 142,391,650 | 11,013,993,856 |
| Accident & Health | 14,831,342 | 1,200,251,319 |

Lincoln Life & Annuity Company of New York

| | Connecticut | Total (All States) |
|---|---|---|
| Life | 2,596,773 | -1,421,151,240 |
| Annuity Considerations | 3,350,228 | 661,619,349 |
| Accident & Health | 701,448 | 48,347,974 |

First Penn-Pacific Life Insurance Company

| | Connecticut | Total (All States) |
|---|---|---|
| Life | 3,059,055 | 123,005,395 |
| Annuity Considerations | 0 | 60,492 |
| Accident & Health | 0 | 0 |

## IV. AGENCY ORGANIZATION

The Companies operate in Connecticut principally through a career agency system and independent producers.

The Companies maintain an ongoing training program for their agents. The Companies supply new producers with product portfolios which provide detailed descriptions of products and coverage. Changes in coverage mandated by statutes or Companies' policies are communicated through written notices as they occur. In addition, the Companies host periodic training seminars for agents.

## V. RECORDS SELECTED FOR REVIEW

The Companies supplied a listing of all new business produced and claims processed during the period under review. A sample of eight hundred twelve (812) new businesses, cancellation and declined contracts, and four hundred seventy (470) claims were selected for review. The samples included life, annuity, variable annuity and accident and health contracts.



Case 1:22-cv-00306-DCLC-CHS Document 20-7 Filed 07/25/23 Page 4 of 26 PageID #: 10040
Exhibit 7 Page 4 of 26

In addition, the producer and the application date for each policy in the samples were noted in order to identify any producers who were not properly licensed and appointed as required by Connecticut statutes. The licensing and appointment review is described in more detail in Section VI.

## VI. PRODUCER LICENSING AND APPOINTMENT

The lists of the new business written during the sample period, identifying the producer for each policy, were compared to the Department's licensing records to determine whether each producer was properly licensed in the State of Connecticut and whether each individual was appointed by the Companies, as required by Connecticut General Statutes §§38a-702b, 38a-702l, and 38a-702m.

Evaluation included, but was not limited to, an assessment based on the following specific standards:

**Standard 1: The Companies' records of licensed and appointed producers agree with Insurance Department's records.**

**Standard 2: Producers are properly licensed and appointed in the jurisdiction where the application was taken.**

The following information was noted in conjunction with the review of this standard:

- The Companies maintain automated producer databases that interface with new business processing, policy maintenance and producer compensation.
- The Companies perform background checks and other due diligence procedures on individuals prior to contracting with them.
- The Companies' appointment procedures are designed to comply with the Department's requirements, which mandate that an agent must be appointed within 15 days from the date the application is received by the Companies.

**Findings:**

Comparisons were made between the Companies' records of licensed and appointed producers and the Insurance Department's records. A review of the Companies' records revealed two (2) individuals who were not licensed and twenty (20) individuals acting as agents who were not appointed by the Company within the timeframe required by statute. It is noted that under Connecticut

Insurance Department Docket Number MC 14-28, executed on May 29, 2014, the Companies were cited for failure to establish proper policies and procedures to ensure compliance with statutory producer licensing and appointment requirements. The Department is concerned that the Companies failed to maintain consistent adherence to corrective actions previously implemented to ensure compliance with Connecticut requirements.

**In Summary:**

It is recommended that each Company review its appointment system to ensure that no new business is accepted from, nor commissions paid to, individuals acting as agents of the Company when they are not appointed as required by statute. It is noted that under Connecticut Insurance Department Docket Number MC 14-28, executed on May 24, 2014, the Companies were cited for failure to establish proper policies and procedures to ensure compliance with statutory producer appointment requirements.

**Standard 3: Termination of producers complies with applicable standards, rules and regulations regarding notification to the producer and notification to the state, if applicable.**

The Companies have procedures to provide notification of termination to the Department.

**Findings:**

The examiners reviewed the Companies' termination lists and verified that no producers were terminated for cause during the examination period.

**Standard 4: The Companies' policies for producer appointments and terminations do not result in unfair discrimination against policyholders.**

**Findings:**

The examiners noted no evidence of unfair discrimination against policyholders as a result of producer appointments and terminations.

**Standard 5: Records of terminated producers adequately document reasons for terminations.**

The examiners reviewed the Companies' terminated producer files to ensure that records are documented sufficiently.

**Findings:**

The examiners verified the listing of terminated agents and reviewed the reasons for termination for each agent. Based on the examiners' review, the Companies' records adequately document reasons for agent termination.

## VII. UNDERWRITING AND RATING

New business files were reviewed to determine the use and accuracy of rating methodology, accuracy of issuance, consistent (non-discriminatory) practices and use of proper forms. The Companies' policies, forms and rates were reviewed for proper filing with the Insurance Department and compliance with applicable statutes and regulations.

Evaluation included, but was not limited to, an assessment based on the following specific standards:

**Standard 1: The rates charged for the policy coverages are in accordance with filed rates, if applicable, or the companies' rating plans.**

The following information was noted in conjunction with the review of this standard:

- Rates are systematically computed based on applicant information and rating classification assigned.
- The Companies provided copies of Department approved rates for the new business submissions reviewed during the examination period.

**Findings:**

The Companies appear to be in compliance.

**Standard 2: The Companies do not permit illegal rebating, commission cutting or inducements.**

The following information was noted in conjunction with the review of this standard:

- The Companies have procedures to pay agent commissions in accordance with the Companies' approved written contracts.



Case 1:22-cv-00306-DCLC-CHS Document 20-7 Filed 07/25/23 Page 7 of 26
PageID #: 10043

**Findings:**

The examiners reviewed the Companies' policies and procedures, and verified that controls are in place to monitor and prevent illegal rebating, commission cutting and inducements.

**Standard 3: All forms, including contracts, riders, endorsement forms and certificates, are filed with the Insurance Department, if applicable.**

The following information was noted in conjunction with the review of this standard:

- The Companies have compliance policies and procedures in place to review forms, rates, contract riders and endorsements.

- The Companies have a process to log and document Department approved forms, rates, contract riders and endorsements.

**Findings:**

No exceptions were noted.

**Standard 4: The Companies' underwriting practices are not to be unfairly discriminatory. The companies adhere to applicable statutes, rules and regulations and companies' guidelines in selection of risks.**

The following information was noted in conjunction with the review of this standard:

- The Companies' policies and procedures prohibit unfair discrimination.

**Findings:**

The Companies appear to be in compliance.

**Standard 5: File documentation adequately supports decisions made.**

The examiners reviewed the sample files selected for review to ensure that all files requested are available for review and sufficiently documented.

**Findings:**

See Section VII. Underwriting and Rating, Additional Concerns.

**Standard 6: Policies and endorsements are issued or renewed accurately, timely and completely.**

The examiners reviewed the sample new business and renewal files to ensure that the Companies' underwriting policies and procedures were consistently applied for each sample file reviewed.

**Findings:**

The Companies' practices for the issuance of policies and endorsements appear to be accurate and timely for the sample files reviewed.

**Standard 7: Applications rejected and not issued are not found to be discriminatory.**

The Companies' underwriting policies and procedures prohibit unfair discrimination.

**Findings:**

The examiners reviewed ninety-two (92) rejected applications and no exceptions were noted.

**Standard 8: Cancellation/non-renewal notices comply with policy provisions and state laws, including the amount of advance notice provided to the insured and other parties to the contract.**

The Companies have procedures in place for the issuance of cancellation and non-renewal notices.

**Findings:**

The examiners reviewed two hundred forty-nine (249) cancellation files, no exceptions were noted.

**Standard 9: Pertinent information on applications that form a part of the policy are complete and accurate.**

**Findings:**

The Companies appear to be in compliance.

**Standard 10: Rescission is not made for non-material misrepresentation.**

**Findings:**

The Companies appear to be in compliance.

**Additional Concerns:**

The examiners noted, through a review of the cancellation sample files, provided by the Companies, six (6) instances from The Lincoln National Life Insurance Company, where the Company could not provide complete copies of cancellation files, including expiration and lapse notices. The Department is concerned that the Companies could not provide documentation for regulatory review.

**In Summary:**

It is recommended that the Companies review their underwriting policies and procedures to ensure that sufficient documentation is maintained for regulatory review.

## VIII. POLICYHOLDER SERVICE

New business files and policy transactions were reviewed for accuracy and timeliness of handling.

Evaluation included, but was not limited to, an assessment based on the following specific standards:

**Standard 1: Premium notices and billing notices are sent out with an adequate amount of advance notice.**

The following information was noted in conjunction with the review of this standard:

- Verification that billing notices are generated automatically based on contract renewal dates and payment cycles.
- If premiums are not received, as required, an overdue premium notice is mailed, noting that non-payment will cause the policy to lapse.

**Findings:**

See Section VII. Underwriting and Rating, Additional Concerns.

**Standard 2: Policy issuance and insured requested cancellations are timely.**

The following information was noted in conjunction with the review of this standard:

- When the policyholder requests cancellation, the cancellation is processed and any premium due is provided to the policyholder.

The Companies' policy is to provide written notice to the policyholders when the Companies cancel for non-payment of premium.

**Findings:**

No exceptions were noted.

**Standard 3: All communication directed to the company is answered in a timely and responsive manner by the appropriate department.**

The following information was noted in conjunction with the review of this standard:

- The Companies have customer call centers to respond to policyholder and member concerns

**Findings:**

The Companies appear to be in compliance.

**Standard 4: Reinstatement is applied consistently and in accordance with policy provisions.**

The Companies have standardized reinstatement guidelines in place to ensure that requests are reviewed and either approved or denied by underwriting.

**Findings:**

The examiners reviewed the Companies' policies and procedures. After reviewing the sample files, no exceptions were noted.

**Standard 5: Policy transactions are processed accurately and completely.**

The Companies have policies and procedures in place for processing policyholder transactions including conversions, plan changes and enrollment updates.

**Findings:**

The Companies appear to be in compliance.

**Standard 6: Non-forfeiture options are communicated to the policyholder and correctly applied in accordance with the policy contract.**

The Companies have policies and procedures in place for processing policyholder transactions including conversions, plan changes and enrollment updates.

**Findings:**

The examiners reviewed sample files, and no exceptions were noted.

**Standard 7: The Companies provide each policy owner with an annual report of policy values in accordance with statutes, rules and regulations and, upon request, an in-force illustration or contract policy summary.**

**Findings:**

Through a review of the sampled new business files, the examiners found that the required information was provided.

**Standard 8: Unearned premiums are correctly calculated and returned to appropriate party in a timely manner and in accordance with applicable statutes, rules and regulations.**

The Companies have policies and procedures in place for processing policyholder transactions including conversions, plan changes and enrollment updates.

**Findings:**

The Companies appear to be in compliance.

## IX. MARKETING AND SALES

The marketing and sales materials were analyzed to identify any piece that had a tendency to mislead or misrepresent any aspect of the Companies' products or benefits to policyholders. In addition, the marketing and sales materials were reviewed to verify compliance with statutes and regulations related to the disclosure of certain information regarding the Companies' identity, financial standing and organization.

Evaluation included, but was not limited to, an assessment based on the following specific standards:

**Standard 1: All advertising and sales materials are in compliance with applicable statutes, rules and regulations.**

The following information was noted in conjunction with the review of this standard:

- Written policies and procedures govern the advertising and sales material process.
- All advertising and sales materials are reviewed in a consistent format through an online submission and tracking process.
- All advertising and producer generated material is subject to compliance review.
- Prior to final approval, all advertising and sales materials are reviewed to ensure that any necessary changes identified during the initial review were made.
- Approved producer submissions are endorsed for use for a specific period.

**Findings:**

The examiners reviewed the advertising material to ensure that pertinent statutes and regulations relative to the disclosure of each Companies' identity, financial standing and organization were reviewed for compliance. In addition, the examiners reviewed a sample of sixty (60) marketing and sales advertisement materials to ensure that the products did not have a tendency to mislead or misrepresent the policyholder. The Companies are in compliance.

**Standard 2: The Companies' internal producer training materials are in compliance with applicable statutes, rules and regulations.**

The Companies have developed training programs for their producers.

**Findings:**

The examiners reviewed the Companies' training programs, and established policies and procedures. The Companies' internal producer training materials appear to be in compliance.

**Standard 3: The Companies' communications to producers are in compliance with applicable statutes, rules and regulations.**

The Companies maintain extensive on-going training programs. Written policies and procedures govern that all communications are reviewed and approved by the Companies' compliance units.

**Findings:**

The Companies appear to be in compliance.

**Standard 4: Outline of coverage is in compliance with applicable statutes, rules and regulations.**

**Findings:**

The Companies appear to be in compliance.

## X. COMPLAINTS

The Department's complaint records and the Companies' complaint records were reviewed to locate any allegations of misrepresentation against the Companies' agents or any other adverse trends.

All twenty-four (24) Department complaints were reviewed, and all one hundred eighteen (118) Non-Department Complaints were reviewed.

Evaluation included, but was not limited to, an assessment based on the following specific standards:

**Standard 1: All complaints or appeals/grievances are recorded in the required format on the Companies' complaint registers.**

The following information was noted in conjunction with the review of this standard:

- Written policies and procedures govern the complaint handling process.
- All complaints are recorded in a consistent format in the complaint log.
- An automated tracking database is used to record and maintain complaint information.

**Findings:**

The Companies appear to be in compliance.

**Standard 2: The Companies have adequate complaint handling procedures in place and communicate such procedures to policyholders.**

The following information was noted in conjunction with the review of this standard:

- The Companies' Plan Descriptions have been reviewed and approved by the Department.
- The complaint handling procedures are included in the Plan Descriptions.

**Findings:**

The examiners verified that the Companies have complaint procedures in place as required by statute.

**Standard 3: The Companies should take adequate steps to finalize and dispose of Department complaints in accordance with applicable statutes, rules and regulations, and contract language.**

**Findings:**

The examiners found no instances where the Department complaints were not responded to in a reasonable time frame.

**Standard 4: The time frame within which the Companies respond to complaints, grievances and appeals is in accordance with applicable statutes, rules and regulations.**

**Findings:**

The Companies appear to be in compliance.

## XI. CLAIMS

The Companies provided a listing of all claims paid during the period under examination. The review consisted of a sampling of paid and denied claims

closed during the examination period. Four hundred and eleven (411) claim files were selected at random for review. The files were reviewed to determine the accuracy and timeliness of claim payments and interest payable on proceeds were recalculated to verify the accuracy of the Companies' calculations and payments.

Evaluation included, but was not limited to, an assessment based on the following specific standards:

**Standard 1: The initial contact by the Companies with the claimant is within the required time frame and claims are settled in a timely manner.**

The following information was noted in conjunction with the review of this standard:

- Written policies and procedures govern the claim handling process.
- All claim notifications are logged into the claim system.
- Claim management monitors claim accuracy and timeliness.

**Findings:**

The companies appear in compliance.

**Standard 2: Claim files are adequately documented.**

The following information was noted in conjunction with the review of this standard:

- copy of proof of loss
- applicable clinical/other investigative correspondence
- written communication, telephone or other communication
- proof of payment

**Findings:**

See Section XI. Claims, Additional Concerns.

**Standard 3: The Companies have appropriate policies in place for the archival and disposal of claim forms.**

**Findings:**

The examiners reviewed the policies and procedures and no identifiable occurrences were found.

**Standard 4: The Companies' claim forms are appropriate for the type of product.**

**Findings:**

The examiners noted that the claim forms were appropriate and in accordance with the Companies' policies and procedures.

**Standard 5: Canceled benefit checks and drafts reflect appropriate claim handling practices.**

The following information was noted in conjunction with the review of this standard:

- Claim procedures were verified to ensure that the check/draft claim process was handled accurately and was appropriate.

**Findings:**

The examiners noted that sampled claim payments were appropriate and in accordance with the Companies' policies and procedures.

**Standard 6: Claim handling practices do not compel claimants to institute litigation, in cases of clear liability and coverage, to recover amounts due under policies by offering substantially less than is due under the policy.**

The following information was noted in conjunction with the review of this standard:

- A review of all litigated claims for the examination period was conducted and no exceptions were noted.

**Findings:**

The examiners reviewed the policies and procedures and no identifiable occurrences were found.

**Standard 7: Reasonable attempts to locate missing policyholders or beneficiaries are made.**

**Findings:**

The examiners reviewed the policies and procedures and no identifiable occurrences were found.

**Additional Concerns:**

The examiners noted, through a review of The Lincoln National Life Insurance Company STD group STD claims, two (2) instances in which correspondence (i.e. denial letter, missing info letter, and claim withdrawal letter) was not sent to the claimants due to a Company's oversight. The Department is concerned that the Company could not provide sufficient documentation for regulatory review.

The examiners noted, through a review of The Lincoln National Life Insurance Company individual annuity death claims, six (6) instances where the Company was not paying interest or where interest was not calculated according to Connecticut requirements. The Company has since issued interest payments in the amount of $14,026 to the beneficiaries accompanied by letters acknowledging the Department's findings. The examiners recommend that the Company review its policies and procedures to ensure that proper interest is paid in accordance with Connecticut requirements.

The examiners noted, through a review of the Lincoln Life & Annuity Company of New York and The Lincoln National Life Insurance Company individual life insurance death claims, forty (40) instances, four (4) for Lincoln National Life Insurance Company and thirty six (36) for Lincoln Life & Annuity Company of New York, where the Company was not paying interest or where interest was not calculated according to Connecticut requirements. The Company has since issued interest payments in the amount of $13,913, ($11,798 for Lincoln National Life Insurance Company; $2,124 for Lincoln Life & Annuity Company of New York) to the beneficiaries accompanied by letters acknowledging the Department's findings. The examiners recommend that the Company review its policies and procedures to ensure that proper interest is paid in accordance with Connecticut requirements.

**Summary:**

It is recommended that the Companies review their claim handling procedures to ensure that all claims are investigated and resolved in accordance with Connecticut requirements. It is noted that under Connecticut Insurance Department Docket number MC 14-28, executed on May 27, 2014, the Company was cited for failure to pay interest or failure to pay proper interest according to Connecticut statutes.

## XII. COMPANY OPERATIONS

Evaluation included, but was not limited to, an assessment based on the following specific standards:

**Standard 1: The companies have up-to-date valid, internal or external, audit programs.**

The following information was noted in conjunction with the review of this standard:

- The Companies have an internal audit department that has performed reviews of a variety of operational functions.
- Audit reports are distributed to all relevant operational and management personnel.
- External audits are performed on a regular basis.

**Findings:**

The Companies performed a number of audits during the examination period. The examiners reviewed the audit reports and found that appropriate action was taken.

**Standard 2: The Companies have appropriate controls, safeguards and procedures for protecting the integrity of computer information.**

The following information was noted in conjunction with the review of this standard:

- The Companies have procedures in place for all operational functions.
- System tests are performed on a regular basis.

**Findings:**

The examiners reviewed and verified that the Companies have programs in place to protect the integrity of computer information.

**Standard 3: The Companies have anti-fraud plans in place.**

The following information was noted in conjunction with the review of this standard:

- The Companies have written anti-fraud plans.
- The Companies have a Special Investigative Unit (SIU) dedicated to the prevention and handling of fraud.
- Potential fraud activity is tracked by the SIU and investigated. Activity is reported to the regulator, as necessary.

**Findings:**

The examiners reviewed the written antifraud plans, and investigative policies and procedures. The Companies have no instances of fraud during the examination period.

**Standard 4: The Companies have valid disaster recovery plans.**

**Findings:**

The examiners verified that the Companies have had a valid disaster recovery and business recovery program in place and no incidences were reported during the examination period.

**Standard 5: Records are adequate, accessible, consistent and orderly and comply with record retention requirements.**

**Findings:**

The examiners have reviewed the Companies' record retention policies and no exceptions were noted.

**Standard 6: The Companies are licensed for the lines of business that are being written.**

**Findings:**

The examiners reviewed the Certificates of Authority for the Companies and compared them to the lines of business that the Companies write in the State of Connecticut.

No exceptions were noted.

**Standard 7: The Companies have procedures for the collection, use and disclosure of information gathered in connection with insurance transactions so as to minimize any improper intrusion into the privacy of applicants and policyholders.**

The following information was noted in conjunction with the review of this standard:

- The Companies' policy allows for sharing customer and personal information with affiliates, but does not share such information with non-affiliates.

- The Companies' policy requires a consumer privacy notice to be provided to policyholders on an annual basis.

- The Companies have developed and implemented information technology security practices to safeguard customer, personal and health information.

- The Companies' internal audit function conducts reviews of privacy policies and procedures.

- The Companies' disclosure authorization forms meet content standards.

**Findings:**

The examiners reviewed the Companies' disclosure authorization forms, and no exceptions were noted.

**Standard 8: The Companies have a comprehensive written information security program for the protection of non-public customer information.**

The examiners reviewed and verified that the Companies have a written security program in place for the protection of non-public customer information.

**Standard 9: The Companies cooperated on a timely basis with the examiners performing the examination.**

**Findings:**

The Department received cooperation from the Companies throughout the examination process.

## XVI. SUMMARY OF RECOMMENDATIONS

Report
Section

VI. Producer Licensing and Appointment:

It is recommended that the Companies review their appointment systems to ensure compliance with current appointment requirements.

VII. Underwriting and Rating

It is recommended that the Companies review their underwriting policies and procedures to ensure that sufficient documentation is maintained for regulatory review.

XI. Claims:

It is recommended that the Companies review their claim handling procedures to ensure that all claims are investigated and resolved pursuant to required claim settlement practices.

## XIV. ACKNOWLEDGMENT

The courtesy and cooperation of the Companies, during the course of the examination, is acknowledged.

Steve DeAngelis, Robert Chester, Meg Salamone, Karen Mayer and Shannon Gonska participated in the preparation of this report.

# STATE OF CONNECTICUT

*INSURANCE DEPARTMENT*


-----------------------------------------------------x

IN THE MATTER OF: DOCKET MC 19-83

LINCOLN LIFE & ANNUITY COMPANY

OF NEW YORK:

-----------------------------------------------------x

## STIPULATION AND CONSENT ORDER

It is hereby stipulated and agreed between Lincoln Life & Annuity Company of New York, and the State of Connecticut Insurance Department by and through Andrew N. Mais, Insurance Commissioner, to wit:

I

WHEREAS, pursuant to a Market Conduct examination, the Insurance Commissioner alleges the following with respect to Lincoln Life & Annuity Company of New York:

1. Lincoln Life & Annuity Company of New York, hereinafter referred to as Respondent, is domiciled in the State of New York and is licensed to transact the business of an insurance company in the State of Connecticut under license number 62057 and is authorized to write life, annuity and health insurance.

2. From May 25, 2018 through August 9, 2019, the Department conducted an examination of Respondent's market conduct practices in the State of Connecticut covering the period from January 1, 2015 through June 30, 2017.

3. During the period under examination, Respondent failed to follow established practices and procedures to ensure compliance with statutory requirements, resulting in instances of:

   a. failure to pay proper interest on individual life claims

4. The conduct as described above violates §38a-452 of the Connecticut General Statutes, and constitutes cause for the imposition of a fine or other administrative penalty under §§38a-2 and 38a-41 of the Connecticut General Statutes.

II

1. WHEREAS, Respondent neither admits nor denies the allegations contained in paragraphs three and four of Article I of this Stipulation; and

2. WHEREAS, Respondent agrees to undertake a complete review of its practices and procedures to enhance compliance with Connecticut statutes in the areas of concern, as described in the Market Conduct Report and this Stipulation; and

3. WHEREAS, Respondent agrees to provide the Insurance Commissioner with a summary of actions taken to comply with the recommendations in the Market Conduct Report within ninety (90) days of the date of this document; and

4. WHEREAS, Respondent agrees to pay a fine in the amount of $7,500 for the violations described herein; and

5. WHEREAS, Respondent, being desirous of terminating this proceeding without the necessity of a formal proceeding or further litigation, does consent to the making of this Consent Order and voluntarily waives:

   a. any right to a hearing; and

   b. any requirement that the Insurance Commissioner's decision contain a statement of findings of fact and conclusions of law; and

   c. any and all rights to object to or challenge before the Insurance Commissioner or in any judicial proceeding any aspect, provision or requirement of this Stipulation.

NOW THEREFORE, upon the consent of the parties, it is hereby ordered and adjudged:

1. That the Insurance Commissioner has jurisdiction of the subject matter of this administrative proceeding.

2. That Respondent is fined the sum of Seven Thousand Five Hundred Dollars ($7,500) for the violations herein above described.

By: Bradley R. Skarie

(Representative of Insurance Company)

## CERTIFICATION

The undersigned deposes and says that he has duly executed this Stipulation and Consent Order on this 4th Day of December 2019 for and on behalf of Lincoln Life & Annuity Company of New York, that he is the Assistant Vice President of such company, and he has authority to execute and file such instrument.

By: [signature]
Bradley R. Skarie

State of

County of

Personally appeared on this 4th day of December 2019 Bradley R. Skarie, signer and sealer of the foregoing Stipulation and Consent Order, acknowledged same to be his free act and deed before me.

Kristina Ann Ash
Notary Public/Commissioner of the Superior Court

KRISTINA ANN ASH
Seal
Notary Public - State of Indiana
Allen County
My Commission Expires Sep 5, 2024

***Section Below To Be Completed by State of Connecticut Insurance Department***

---

Dated at Hartford, Connecticut this 11th day of December 2019.

[signature]
Andrew N. Mais
Insurance Commissioner