UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JODY PROFFITT, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:14-cv-1576 |
| METROPOLITAN LIFE INSURANCE COMPANY, | ) | Judge Campbell<br>Magistrate Judge Bryant |
| VERIZON WIRELESS MANAGED DISABILITY BENEFITS PLAN, and | ) | |
| CELLCO PARTNERSHIP, D/B/A VERIZON WIRELESS AND AFFILIATES | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is the Plaintiff's motion to be allowed to conduct discovery. (Docket Entry 30). For the following reasons, the Plaintiff's motion is **GRANTED IN PART and DENIED IN PART**.

### I. Statement of the Case

The Plaintiff filed this lawsuit on August 1, 2014, alleging that the Defendants had wrongfully denied his application for short-term and long-term disability benefits under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plaintiff alleges that he suffers from lumbar post-laminectomy syndrome and lumbar radiculopathy. (Docket Entry 1 ¶ 38). The plan at issue is Defendant Verizon Wireless Managed Disability Benefits Plan (the "Plan"). (Docket Entry 1 ¶ 5). According to the Plaintiff's complaint, Defendant Metropolitan Life Insurance Company ("MetLife") processed disability

claims and appeals under the Plan. (Docket Entry 1 ¶ 15). Whereas the short-term disability portion of the Plan is self-funded by Defendant Cellco Partnership, d/b/a Verizon Wireless and Affiliates, long-term benefits are fully insured by MetLife under Group Policy Number 96398-G (the "Policy"). (Docket Entry 1 ¶ 16-17). Consequently, MetLife both processes and pays claims for long-term disability benefits.

The Plaintiff's initial application for short-term and long-term disability benefits was denied by MetLife. (Docket Entry 1 ¶ 21). Though the Plaintiff appealed this decision, MetLife issued a final denial of benefits on May 19, 2014. (Docket Entry 1 ¶ 21). As MetLife would be required to pay any long-term benefits and as MetLife was the entity who decided the Plaintiff's benefits claims, the Plaintiff alleges that MetLife's decision to deny benefits was affected by an inherent conflict of interest. (Docket Entry 1 ¶ 31). Since MetLife allegedly uses the same claims processing procedure for insured claims as well as self-funded claims, the Plaintiff contends that MetLife's inherent conflict of interest likewise influenced its decision to deny short-term disability benefits. (Docket Entry 1 ¶ 33-36).

The Plaintiff and the Defendants have attempted to informally resolve any needed discovery in this action. (Docket Entries 30-2 and 30-3). Despite the parties' attempts, however, the issue of discovery has not yet been fully resolved. The Plaintiff filed a motion to be allowed to conduct discovery. (Docket Entry 30). This motion has been fully briefed and is ripe for a decision. (Docket Entries 34, 37, and 40).

## II. Standard of Review

In general, the district court's review of an ERISA denial-of-benefits claim is limited to the administrative record that was before the plan administrator. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (citing *Wilkins v. Baptist Healthcare Sys.*,

*Inc.*, 150 F.3d 609, 618 (6th Cir. 1998)). An exception to this general rule applies for evidence "offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007) (quoting *Wilkins*, 150 F.3d at 619). Accordingly, discovery may be taken at the district court level, but its scope is limited to these procedural challenges. *Id.* (citing *Wilkins*, 150 F.3d at 619).[1]

## III. Analysis

According to the Plaintiff, limited discovery is warranted for two nonexclusive reasons: (1) MetLife's investigation into the Plaintiff's disability claims was inadequate and/or (2) MetLife's inherent conflict of interest influenced its decision to deny the Plaintiff's disability claims. (Docket Entry 30, p. 7). First, the Plaintiff alleges that MetLife's procedural handling of his disability claims was deficient because MetLife did not request an independent medical examination of the Plaintiff and because MetLife improperly gave greater weight to its non-examining consultative physicians than it gave to the Plaintiff's treating physicians. (Docket Entry 30, p. 7). Second, the Plaintiff alleges that MetLife operated under a conflict of interest when it both served as the claims administrator for short-term and long-term disability benefits and was responsible for paying long-term disability benefits. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (finding that an inherent conflict of interest arises when an insurance company plays the dual roles of claims payer and claims administrator).

This satisfies our local threshold for obtaining limited discovery. *See Kinsler*, 660 F. Supp. 2d at 836. Any discovery permitted, however, must be narrowly tailored to identifying bias

[1] The Sixth Circuit has not definitively established what, if any, evidentiary threshold must be crossed to obtain this limited discovery. Previously this Court permitted discovery based on the mere allegation that the plan administrator was acting under a conflict of interest. *Kinsler v. Lincoln Nat. Life Ins. Co.*, 660 F. Supp. 2d 830, 836 (M.D. Tenn. 2009) (permitting limited discovery when the plaintiff alleged that the defendant plan administrator both decided benefits claims and paid benefits claims). The *Kinsler* standard is applied herein.

or a deprivation of due process. The Plaintiff seeks responses to two interrogatories, one request for production, and three requests to admit or deny. Each is addressed in turn.

**A. Interrogatory 1**

The Plaintiff seeks to propound the following interrogatory:

> State whether MetLife had, at any time relevant to this case, any type of incentive, bonus, or reward program or system, formal or informal, for any employees involved in any meaningful way in reviewing medical claims, and please describe what factors and information is relied upon to calculate any such bonuses.

(Docket Entry 30, p. 8). Though this is an interrogatory, the Plaintiff contends that it is "entitled to see the documents which substantiate – or invalidate – such a claim." (Docket Entry 30, p. 8). During the parties' informal discussions, MetLife responded:

> MetLife's claims specialists receive no compensation, awards, bonuses or other financial benefits or performance recognition based upon either the value or number of claims they deny or terminate.

(Docket Entry 30-3, p. 2). MetLife maintains that the wording "any type of incentive bonus, or reward program or system" is far too broad for the limited discovery available. (Docket Entry 34, p. 4).

The broad wording of this interrogatory is problematic. Though the type of information sought by the Plaintiff would be useful in establishing bias, the proposed interrogatory does not specify that the incentive-type program must be connected to employees' handling of benefits claims. For example, MetLife could have an incentive plan to reduce the number of sick days taken by all employees. This would necessarily include all of the employees meaningfully involved in approving or denying benefits claims. As worded, the proposed interrogatory could reasonably be read to require disclosure of the sick day program. As the hypothetical sick day program has no bearing on the issue of bias, its disclosure would be irrelevant and outside the limited boundaries of ERISA discovery.

In its response, MetLife attempted to narrow the scope of this interrogatory to the proper focus: incentive-type programs that are tied to the way in which benefits claims are handled. MetLife's response is a step in the right direction. It does not, however, address whether any such claims-based incentive-type programs exist and are applied to employees other than claims specialists. For instance, if a physician employed by MetLife recommended denying a claim for disability benefits and that recommendation was adopted, it would be relevant to know whether the hypothetical physician's judgment was influenced by a claims-based incentive-type program.

Taking the parties' concerns into consideration, the interrogatory is revised as follows:

> State whether MetLife had, at any time relevant to this case, any type of incentive, bonus, or reward program or system, formal or informal, **based on the value or number of medical and/or disability claims that are denied or terminated,** for any employees involved in any meaningful way in reviewing medical claims, and please describe what factors and information is relied upon to calculate any such bonuses.

(emphasis added). MetLife should respond to this interrogatory within **fourteen days**. MetLife's response should be made in accordance with Rule 33 of the Federal Rules of Civil Procedure. Contrary to the Plaintiff's assertion, Rule 33 does not require that responses to interrogatories contain supporting documentation. While Rule 33(d) gives the option to respond by producing business records, answers to interrogatories may be submitted in writing under oath. Fed. R. Civ. P. 33(b)(3).

**B. Interrogatory 2**

Next, the Plaintiff seeks a response to the second interrogatory:

> Define the term **"objective clinical findings"** as it relates to Mr. Proffitt's disability claim, explain the source of said definition, and demonstrate when MetLife provided Mr. Proffitt with said definition.

(Docket Entry 30, p. 8) (emphasis added). MetLife responded with the following:


Exhibit 11 Page 5 of 10
Case 1:22-cv-00306-DCLC-CHS Document 20-11 Filed 07/25/23 Page 5 of 10 PageID #: 10267
Case 3:14-cv-01576 Document 61 Filed 03/08/16 Page 5 of 10 PageID #: 1479

> The Plan documents, which were filed with the Court as part of the Administrative Record on December 8, 2014 and a copy of which was provided to you, required Mr. Proffitt to provide **"objective medical evidence"** to clinically substantiate his disability claim. That requirement and an explanation of the required objective medical evidence is provided in the Administrative Record on page AR00876.[2]

(Docket Entry 30-3, p. 2) (emphasis added). According to MetLife, the Plaintiff did not indicate that this response was insufficient prior to filing this motion for limited discovery and objects on this basis. (Docket Entry 34, p. 3).

The two phrases "objective clinical findings" and "objective medical evidence" are derived from the Policy and the SPD. The Plaintiff maintains that the authoritative source for determining long-term disability benefits is the Policy. This is because the SPD states that "[f]or [long-term disability] benefits, the MetLife group insurance contract / certificate of insurance governs" (Docket Entry 24-4, p. 4) and the Plan states that "[t]o the extent there is any conflict between the terms of this Plan or the SPD and the insurance documents, the insurance documents shall govern" (Docket Entry 24-3, p. 26).

The Policy provides that applications for long-term disability must be supported with "**Proof of Disability**" which may include "physical exams, exams by independent medical examiners, in-home interviews or functional capacity exams." (Docket Entry 30-4, p. 27) (emphasis added). "Proof" is defined in part as "[w]ritten evidence satisfactory to [MetLife] that a person has satisfied the conditions and requirements for any benefit described in this certificate." (Docket Entry 30-4, p. 20-21). The Policy states that disability benefits are limited for neuromusculoskeletal and soft tissue disorders unless there is "objective evidence of . . . Radiculopathies," which is a "disease of the peripheral nerve roots supported by **objective clinical findings** of nerve pathology." (Docket Entry 30-4, p. 35-36) (emphasis added). Put in

[2] This page is found in the short-term disability section of the Managed Disability Summary Plan Description (the "SPD"). (Docket Entry 24-4, p. 1, 10).

plainer terms, under the Policy "objective clinical findings" are only considered once the claimant has submitted sufficient "proof" of his disability. The SPD, on the other hand, requires that long-term disability claims be supported with "objective medical evidence." (Docket Entry 24-4, p. 18).

This interrogatory does not fall within the limited scope of ERISA discovery. It is not pertinent to establishing bias or a lack of procedural due process. As MetLife concluded that the Plaintiff's disability claims were unsubstantiated, MetLife did not consider, and did not need to consider, the possibility that the Plaintiff may have radiculopathies supported by objective clinical findings. As the term "objective clinical findings" was not used in assessing the Plaintiff's disability claims, the term's definition is not germane to this specific due process inquiry. To the extent that the Plaintiff believes the alleged lack of a definition is a breach of fiduciary duties or another ERISA violation, the Plaintiff may so argue but not in a request for discovery. MetLife need not respond to this interrogatory.

**C. Request for Production**

The Plaintiff seeks an answer to the following request for production:

> For any MetLife employees involved in any meaningful way in reviewing Mr. Proffitt's disability claim, including the employees who signed the denial letters, please provide copies of any documents which show any type of incentive, bonus, or reward program or system, formal or informal, for said employees, and all documents showing how such bonus was calculated.

(Docket Entry 30, p. 10-11). Along with its motion for discovery, the Plaintiff submitted an order from the United States District Court for the Eastern District of Kentucky in which the Honorable Chief Judge Karen Caldwell permitted the plaintiff to propound a nearly identical request for production. *See Williams v. Aetna Life Ins. Co.*, No. CIV.A. 13-241-KSF, 2014 WL 1513161, at *1 (E.D. Ky. Apr. 16, 2014). Judge Caldwell noted, however, that the defendant had

not objected to the request for production. *Id.*[3] MetLife responded that "MetLife has no documents responsive to this request." (Docket Entry 30-3, p. 2).

This discovery request raises the same issues as the first interrogatory. The phrasing of the request will be similarly tailored. MetLife should respond to the following request for production within **fourteen days**:

> For any MetLife employees involved in any meaningful way in reviewing Mr. Proffitt's disability claim, including the employees who signed the denial letters, please provide copies of any documents which show any type of incentive, bonus, or reward program or system, formal or informal, **based on the value or number of medical and/or disability claims that are denied or terminated,** for said employees, and all documents showing how such bonus was calculated.

(emphasis added). As is stated in Federal Rule of Civil Procedure 34(a)(1), only items in a party's "possession, custody, or control" are subject to requests for production. Fed. R. Civ. P. 34(a)(1). "[A] request for production cannot require the responding parties to 'create' documents that are not already in existence." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, No. 3:09-0487, 2013 WL 5306444, at *1 (M.D. Tenn. Sept. 20, 2013) (citation omitted). As applied to MetLife, if records responsive to this request for production exist, they should be produced or MetLife should lodge an appropriate objection. If no responsive records exist, MetLife should again state that it does not possess documents responsive to the Plaintiff's request for production.

**D. Requests to Admit or Deny**

The Plaintiff wishes to have MetLife admit or deny the following three statements:

> (1) Admit that it is MetLife's policy, that, in order to properly consider a claim, its employees should fully investigate the relevant and applicable facts of any claim.

[3] It appears that counsel for the Plaintiff in the present case also served as counsel for the *Williams* plaintiff.

(2) Admit that it is MetLife's policy that, as an ERISA fiduciary, in order to properly consider a claim, MetLife's employees should consider the interests of their insureds at least equal to MetLife's interests.

(3) Admit that in the determination of disability, MetLife must take into consideration current restrictions and limitations that are supported by clinical evidence that substantiates a claimant's inability to perform his or her own occupation, as described in MetLife's June 20, 2013 denial letter.

(Docket Entry 30, p. 11). The Plaintiff believes that these statements are relevant to establishing the consequences of MetLife's conflict of interest and the procedural deficiencies in the handling of the Plaintiff's claims. (Docket Entry 30, p. 11). In support of this request, the Plaintiff refers again to *Williams v. Aetna Life Insurance Company* where Judge Caldwell permitted the plaintiff to submit similar requests to admit or deny. *See Williams*, No. CIV.A. 13-241-KSF, 2014 WL 1513161, at *2. In doing so, Judge Caldwell overruled the defendant's objection that the requests were not narrowly tailored to assessing potential conflicts of interest or procedural deficiencies. *Id.*

MetLife declined to respond to these requests to admit or deny, stating:

> MetLife objects and declines to respond to the foregoing requests for admission for the reason that the requests are beyond the scope of the issue of whether an inherent conflict of interest adversely affected the determination of the claim at issue and/or for the reason that MetLife's obligations are as defined by the terms of the Plan documents, copies of which were included in the Administrative Record filed with the Court on December 8, 2014 and a copy of which was provided to [the Plaintiff], and by the Employee Retirement Income Security Act (ERISA). The Plan documents and provisions of ERISA, as construed by the courts, speak for themselves.

(Docket Entry 30-3, p. 3). According to MetLife, these requests are not relevant to assessing the impact of this particular conflict of interest, MetLife's processes and procedures are reflected in the administrative record, MetLife's legal duties only come from the Plan documents and ERISA provisions, and the requests improperly seek admission of legal conclusions. (Docket Entry 34,

p. 8-9). Additionally, MetLife argues that the wording of these requests is too vague, challenging the phrases "to properly consider" and "fully investigate." (Docket Entry 34, p. 10).

Rule 36 requests for admission may be used to determine "facts, the application of law to fact, or opinions about either; and . . . the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). Such requests may not be used for obtaining legal conclusions. *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (quoting 7 *Moore's Federal Practice* § 36.10[8] at 36-26 (3d ed. 2008)); *Veterinary Hosp. Managers Ass'n, Inc. v. Dorris*, No. 2:08-CV-2647-JPM-TMP, 2009 WL 5031314, at *1 (W.D. Tenn. Dec. 11, 2009)).

While the proposed requests for admission do not seek legal conclusions, they are nevertheless outside the scope of ERISA discovery. As MetLife pointed out, its legal obligations are set forth in the Plan documents and ERISA provisions. MetLife's internal policies, if any, are not the proper focus of discovery. To the extent that MetLife's internal policies conflict with its obligations under the Plan documents or ERISA provisions, the Plan documents and ERISA provisions are controlling. As such, discovery is properly cabined to MetLife's obligations under the Plan documents and ERISA provisions and MetLife's compliance with those obligations. Though similar requests for admission were permitted in *Williams v. Aetna Life Insurance Company*, No. CIV.A. 13-241-KSF, 2014 WL 1513161, at *2 (E.D. Ky. Apr. 16, 2014), that case is not binding on this Court, and the Magistrate Judge respectfully declines to follow that case under the current set of facts. MetLife need not respond to these requests for admission.

It is so **ORDERED**.

/s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge