TROUTMAN SANDERS LLP
Christina H. Bost Seaton (CB-7667)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 704-6000
*Attorneys for Defendant*
*Hartford Life and Accident Insurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIE JACOBY,<br><br>Plaintiff,<br><br>-against-<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br>Defendant. | **No.: 07 Civ. 4627 (LAK) (RLE)** |

**RESPONSES AND OBJECTIONS OF HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY TO PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Defendant Hartford Life and Accident Insurance Company ("Hartford"), by counsel, hereby sets forth the following as its Responses and Objections to Plaintiff's Second Set of Interrogatories.[1]

**GENERAL OBJECTIONS**

1. Hartford objects to any Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine or any other privilege recognized at law. Pursuant to this objection, Hartford will not answer any Interrogatory that requires it to provide

[1] In its Objections, Hartford is repeating its objections previously filed, understanding that the Court has ruled on some of them and they have been overruled. Hartford is not standing on those objections.

the substance of any privileged attorney-client communication or reveal any information protected by the work product doctrine.

2. Hartford objects to the "Definitions and Instructions" to the extent they attempt to impose obligations on it beyond those provided by the Federal Rules of Civil Procedure or Local Rules.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

1. Interrogatory No. 1: Identify and describe all forms of compensation, including without limitation, any financial incentives, bonuses, commissions or other monetary awards for the years 2006 and 2007 for all individuals who worked on plaintiff's claim and/or appeal, including but not limited to the following individuals: Lisa M. Bice, Brenda M. Boulton, Jamie Brostek, Shannon M. Butler, Erik Cherchio, Johanna C. Cobb, William T. Conklin, Stephen I. Craver, Paul Crosby, April M. Dameron, Laurie B. Ellis, Christina M. Fleicher, Sarah C. Frankowski, Edna R. Golych, Courtney S. Grosvenor, Theresa A. Habeeb, Jill A. Hierholzer, Lisa S. Housley, Shannon M. Meyer, Troy C. Murray, Fawn T. Nicita, Thomas C. Payne, Annette L. Rice, Tina M. Sekorski, Jacqueline C. Siver, Kelly L. Slade, Christopher Volo, and Fern E. Wool. As to each, state the amount of compensation and the criteria for the award.

**Objection**: Hartford objects to Interrogatory No. 1 on the grounds that it is overly broad, unduly burdensome and seeks information which is beyond the permissible scope of discovery insofar as it not reasonably calculated to lead to the discovery of admissible evidence. To the extent that Plaintiff seeks information concerning "all forms of compensation" paid to the referenced individuals, she seeks to invade their privacy interests. In addition, to the extent that Plaintiff seeks information about compensation which is wholly unrelated to benefits decision-making, the Interrogatory is not calculated to lead to the discovery of admissible evidence.

Finally, to the extent that Plaintiff seeks to obtain "all forms of compensation" concerning individuals who had no decision-making authority or provided no substantive information relating to the decision to terminate Plaintiff's benefits, the Interrogatory seeks to uncover information not reasonably calculated to lead to the discovery of admissible evidence.

**Response:** Subject to and without waiving the foregoing objections, and pursuant to its agreement with Plaintiff's counsel to limit its response to information relating to the individuals involved in the decision-making process (Laurie B. Ellis, Christina M. Fleischer, Edna R. Golych and Johanna C. Cobb), Hartford states that these employees are compensated in the form of an annual salary. These employees are also eligible for either a Business Performance Award ("BPA") or an Individual Performance Award ("IPA") or both. BPA's are based on the profitability of the Group Benefits Division. IPA's are awarded in the discretion of the manager based upon the performance of the employee. No Hartford employee with responsibility over the claim is compensated based on approval or denial of benefits, and approval or denial is not a factor that an employee's supervisor, or Hartford itself, considers in evaluating the employee for compensation or any other purpose. Thus, Hartford employees do not have any monetary or non-monetary incentive to deny or terminate claims or to deny appeals. By way of further response, Hartford will produce documents relating to compensation received by Ms. Ellis, Ms. Fleischer, Ms. Golych and Ms. Cobb, subject to an appropriate protective order, and documents relating to the criteria for issuing bonuses to Hartford employees.

2. Interrogatory No. 2: Identify the grounds for performance evaluation, promotion, demotion and/or layoff/termination decisions with respect to any individual or entity identified in response to Interrogatory 1. Please attach all performance appraisals for 2005, 2006 and 2007 for each of the following individuals: Shannon M. Butler, Johanna C. Cobb, William T. Conklin, Stephen J. Craven, Paul Crosby, Laurie B. Ellis, Christina M. Fleicher, Edna R. Golych, Annette J. Rice, Christopher Volo.

**Objection**: *See* Objection to Interrogatory No. 1. Hartford also objects to Interrogatory No. 2 on the grounds that it is overly broad, unduly burdensome and seeks information which is beyond the permissible scope of discovery insofar as it is not reasonably calculated to lead to the discovery of admissible evidence. For example, Plaintiff asks Hartford to identify "the grounds for performance evaluation[s]" for 28 individuals over a three-year period. The rationale for every aspect of these individuals' performance evaluations is not reasonably calculated to lead to the discovery of admissible evidence and would require Hartford to identify the factual basis for the manner in which it evaluated each of these individuals regarding all aspects of their performance. In addition, the Interrogatory seeks to invade the privacy interests of the referenced employees. This Interrogatory is in no way limited to the type of information that could demonstrate a conflict of interest and is therefore overly broad.

**Response:** Subject to and without waiving the foregoing Objections, and pursuant to its agreement with Plaintiff's counsel to limit its response to information relating to Ms. Ellis, Ms. Fleischer, Ms. Golych and Ms. Cobb, Hartford responds that its Claims Examiners, Appeal Specialists and Investigative Analysts are required to review all claims for disability benefits thoroughly and base their benefit determinations solely upon the merits of the claim in accordance with the governing plan documents and apply the plan provisions consistently to all

claims. These individuals are required to review all evidence submitted by the Claimant or the Claimant's medical provider(s) and are also required to request and review any and all updated documentation from the Claimant or the Claimant's medical provider(s). These individuals are also trained to administer claims in accordance with the BMS Reference Manual and/or the SIU Claim Manual. In addition, Hartford also established the LTD Measures of Excellence program to ensure its decision-makers are setting appropriate claim investigation strategies, conducting appropriate claim investigations in a timely manner, making appropriate, timely determinations that are sufficiently documented, and correctly calculating and paying benefits. The goals of the LTD Measure of Excellence program are measured by breaking down and scoring overall claim handling process into three stages: (1) the Front end or Initial Investigation/Determination Claim Management; (2) the On-Going Claim Management; and (3) Claim Management by the Stable and Mature Unit. As part of this Program, a Quality Assurance Analyst conducts a monthly review of randomly selected claim files (from open and closed claims) from each Claims Examiner. The Quality Assurance Analyst reviews the activity in the claim file and the Disability Claim System, focusing primarily on the claim activity/handling that occurred within the pre-defined review period. During the Quality Assurance review, the reviewer will determine if there is a correction needed on a claim. If a correction is needed, the Claims Examiner will make the correction and the team leader will be responsible for ensuring the corrections are made in the required time frame. A primary purpose of the program is to foster a continuous learning environment to provide feedback and training so the decision-makers can meet the goal of providing a quality end result. By way of further response, Hartford will provide performance evaluations, subject to an appropriate protective order, relating to Johanna C. Cobb, Laurie B. Ellis, Christina M. Fleischer and Edna R. Golych.

3. Interrogatory No. 3: If Hartford contends that it does not have a conflict between its obligations under ERISA and its profit-maximizing motive as a business, state all facts on which Hartford relies for such contention.

**Objection**: Hartford objects to Interrogatory No. 3 on the grounds that it is vague and ambiguous. Hartford has many "obligations under ERISA" and Plaintiff has not specified which "obligations" she wants Hartford to address. In addition, the definition of "Hartford" is overly broad and includes a number of entities which have nothing to do with this litigation.

**Response:** Subject to the foregoing objection and without waiving the same, Hartford maintains that there is no conflict between its obligations under ERISA and its success as a business. In essence, Hartford's business is enhanced by making correct decisions in connection with claims made by individuals who are insured under its policies or who are participants in employee welfare benefit plans which are funded by insurance policies issued by Hartford. If Hartford renders well-reasoned decisions supported by the evidence which reaches the right result, Hartford is maintaining its fiduciary duty under the Plan to pay claims that should be paid, and not pay those that should not be paid. If Hartford were to deny a disproportionate number of claims, or routinely deny claims which it should accept, existing policyholders would be less inclined to renew their policies with Hartford (because their employees would be dissatisfied with the quality of the group coverage provided by the employer to its employees), Hartford's reputation would suffer, and it would not continue to do well in the marketplace or fulfill its fiduciary obligations. For this reason, Hartford does not have a conflict between its obligations under ERISA and its motive to succeed as a business. *See also* Hartford's response to Interrogatory number 4.

4. Interrogatory No. 4: If Hartford contends that any conflict between its ERISA obligations and its profit-maximizing motive as a business is *de minimis* or did not taint any decision issued in this claim, state all facts on which it relies for such contention, identify all persons with knowledge of such facts and state the substance of the facts known by each.

**Objection**: Hartford objects to Interrogatory No. 4 on the grounds that it is vague and ambiguous. Hartford has many "obligations under ERISA" and Plaintiff has not specified which "obligations" she wants Hartford to address. In addition, the definition of "Hartford" is overly broad and includes a number of entities which have nothing to do with this litigation.

**Response**: Subject to and without waiving the foregoing Objections, Hartford states that there is no conflict between any ERISA obligations owed by Hartford and its desire to succeed as a business, and no such conflict tainted any decision rendered in this claim. The decision rendered by Hartford in this case was based on substantial and compelling evidence. Indeed, Hartford conducted a careful, painstaking review of Plaintiff's claim. Hartford compiled a record that is 1,845 pages in length; it obtained numerous medical reviews, including four reviews by independent physicians; it carefully considered the opinions of Plaintiff's treating physicians, her own statements and the determination of the Social Security Administration; and it obtained surveillance, including video, which demonstrated that Plaintiff's subjective descriptions of her restrictions and limitations were markedly different from and inconsistent with her actions.

Additionally, the following facts, among others, demonstrate that there is no conflict between Hartford's fiduciary obligations and its desire to succeed as a business:

- Each claim is analyzed individually and without consideration of other claims, any set reserve amount, the cost to Hartford to approve or deny a claim, and the

examiner's future employment or role within Hartford. Each claim is analyzed based upon the policy and plan terms applicable to that claim. On appeal, each claim is independently analyzed by an Appeal Specialist in the Appeal Unit who had no role or input in the initial investigation and termination of the claim.

- Hartford does not provide any monetary (or any other) benefit to its employees based on the number of claims that are denied. Employees have no financial incentives to deny claims.
- Hartford requires as a performance measure for its employees that all claims are to be reviewed fairly, fully and objectively. During their annual reviews, claims personnel are critiqued based on the timeliness and thoroughness of their investigations and whether their decision is supported by the documents and information adduced during the claim investigation process. The subject of claims approved versus claims denied is never raised during annual reviews, and it does not effect, nor is it considered in, claims personnel reviews or compensation decisions.
- Claims handling is based on information and evidence that Hartford receives during the claims process and is in no way outcome determinative.
- Hartford uses independent, third party vendors to conduct medical records reviews and independent medical examinations.
- Hartford does not provide any financial incentive or monetary (or any other) benefit to its third-party vendors based on denial of claims.

- Hartford does not employ in-house physicians or contract directly with the reviewing physicians, and has no control over which physicians are selected to review a particular claim.
- Hartford conducts routine audits of its vendors, such as MAG and UDC, to determine whether they are following best practices.
- Hartford tracks the reviews performed by medical reviewers to ensure that the vendor is not giving a disproportionate amount of work to a particular reviewer.
- Hartford ensures that the vendors with whom it contracts engages physicians in good standing with, among other things, the requisite medical specialty and Board certification. In addition, Hartford requires that the vast majority of the physicians be engaged in the active practice of medicine.
- The Hartford claims and appeals departments are completely separate from the financial area of the business. In this regard, the financial employees have no influence or oversight over claims decisions.
- Claims personnel do not have access to or knowledge of financial information regarding a policyholder, nor is information regarding the profitability or other financial information of a policyholder provided or accessible to them. Indeed, Claims personnel are walled off from those interested in firm finances. The claims personnel are separate from and are not involved with those persons responsible for Hartford's financial operations and decisions. Claims investigations and decisions are made separately from, and without consideration of, the financial affairs of Hartford.

- Hartford conducts quality reviews of its claim files on a random basis to determine if the claim was handled properly.
- Hartford maintains a comprehensive BMS Claims Manual that must be followed to ensure consistency and best practices.
- When a claim denial is appealed, the entire claim file, including the appeal investigation and the decision which the appeal is based, is assigned to a person who had no involvement in the original claim decision. The person investigating and deciding the appeal has the sole authority to make the appeal decision.

By way of further response, Hartford incorporates by reference its summary judgment briefs and the contents of Plaintiff's claim file, which was previously produced. *See also* Hartford's response to Interrogatory Nos. 2 and 3, and documents produced in response to Plaintiff's Request for Production of Documents.

5. Interrogatory No. 5: Identify what procedures, if any, Hartford has in place to comply with its fiduciary obligations under 29 C.F.R. 2560.503-1(b)(5) to treat similarly situated claimants "consistently."

**Objection**: Hartford objects to Interrogatory No. 5 to the extent that it misstates the referenced regulation. In addition, this Interrogatory seeks information which is not reasonably calculated to lead to the discovery of admissible evidence concerning the conflict of interest issue which is the subject of discovery.

**Response:** Subject to the foregoing Objection and without waiving the same, see response to Interrogatory Nos. 2 and 4.

6. Interrogatory No. 6: For each third-party medical or vocational professional who conducted an examination, review or study with respect to plaintiff, please state: (a) the number of times that such professional was retained, hired or otherwise utilized by Hartford (either directly or through one of its consulting firms or agents) to conduct an examination, review or study with respect to Hartford's insureds and/or claimants in each of 2005 through 2007; (b) the percentage of total professional time in each of 2005 through 2007 that each such third-party medical or vocational professional spent performing examinations, reviews or studies as opposed to treating patients; (c) the percentage of total compensation in each of 2005 through 2007 that each such third-party medical or vocational professional derived from performing examinations, reviews or studies on behalf of Hartford.

**Objection**: Hartford objects to Interrogatory No. 6 and particularly sub-parts (b) and (c) on the grounds that it is overly broad, unduly burdensome and seeks information that is beyond the possession, custody or control of Hartford. The third-party medical or vocational professionals are not controlled by Hartford or subject to its direction.

**Response:** Subjection to the foregoing Objections and without waiving the same, Hartford responds as follows:

In regard to subsection (a), Hartford does not retain the individual medical reviewer who conducts the review of the claimant's file. Rather, Hartford retains third-party vendors, including, but not limited to University Disability Consortium ("UDC") and Medical Advisory Group, L.L.C. ("MAG"), who in turn retain the individual physician to perform the review.

In 2005, UDC was retained by Hartford, and UDC in turn retained independent physicians, to perform 2,517 medical record reviews on disability claims submitted to Hartford.

In 2005, MAG was retained by Hartford, and MAG in turn retained independent physicians, to perform 1,396 reviews for Hartford.

In 2006, UDC was retained by Hartford, and UDC in turn retained independent physicians, to perform 1,774 medical record reviews on disability claims submitted to Hartford. In 2006, MAG was retained by Hartford, and MAG in turn retained independent physicians, to perform 1,179 reviews for Hartford.

In 2007, UDC was retained by Hartford, and UDC in turn retained independent physician, to perform 893 medical record reviews on disability claims submitted to Hartford. In 2007, MAG was retained by Hartford, and MAG in turn retained independent physicians, to perform 612 reviews for Hartford.

Hartford tracks the number of times a particular physician reviews a claim in order to ensure that its vendor does not assign a disproportionate number of cases to a particular reviewer. Between 2005 and 2007, Dr. Richard Levy reviewed 33 cases. Between 2005 and 2007, Dr. William Sniger reviewed 478 cases. Between 2005 and 2007, Dr. Pedro Garrido-Castillo reviewed 50 cases. Between 2005 and 2007, Dr. Jerome Siegel reviewed 189 cases.

In regard to subparts (b) and (c), the requested information is not in Hartford's possession, custody or control. Hartford can state, however, based on information received from UDC, that Dr. Siegel maintains an active medical practice with only 25% of his income coming from reviews for UDC. Based on information from UDC, Dr. Garrido-Castillo also maintains an active medical practice with less than 5% of his income coming from reviews for UDC. Despite its requests, Hartford was not able to obtain information regarding the physicians engaged by MAG. Moreover, Hartford does not pay these professionals, and it is not privy to what those professionals are paid by UDC or MAG. Hartford can state, however, based on information

received from UDC, that Dr. Siegel earned $95,686 on Hartford cases in 2005 and $10,075 on non-Hartford cases; he earned $83,884 on Hartford cases in 2006 and $35,511 on non-Hartford cases; and he earned $28,769 on Hartford cases in 2007 and $50,234 on non-Hartford cases. Based on information received from UDC, Dr. Garrido-Castillo earned $11,595 on Hartford cases in 2005, $9,525 on Hartford cases in 2006, and $5,835 on Hartford cases in 2007. Dr. Garrido-Castillo did not perform any reviews on non-Hartford cases during those years. Despite its requests, Hartford was not able to obtain information regarding the physicians engaged by MAG.

7. Interrogatory No. 7: With respect to each third-party professional listed in response to Interrogatory 6, list all of the different types of injuries and/or illnesses suffered by insureds and/or claimants for which each such professional performed one or more examinations, review or studies in each of 2005 through 2007.

**Objection**: Hartford objects to Interrogatory No. 7 on the grounds that it is overly broad, unduly burdensome and seeks information which is beyond the permissible scope of discovery insofar as it is not reasonably calculated to lead to the discovery of admissible evidence. In addition, the Interrogatory seeks information which is not within the possession, custody or control of Hartford. The request that Hartford list all of the types of injuries and illnesses suffered by insureds or claimants for whom third-party professionals perform examinations, reviews or studies between 2005 and 2007 has no bearing whatsoever on the conflict of interest issue which is the subject of discovery.

**Response:** Subject to and without waiving the foregoing objections, Hartford provides the following list of illnesses and injuries, relating to which each physician performed a review for a Hartford claimant, during the years of 2005-2007. Hartford is still gathering this information and will supplement its response.

8. Interrogatory No. 8: If any of the examinations, reviews and/or studies conducted by third-party professionals listed in response to Interrogatory 6 was arranged by some entity other than Hartford, please state: (a) the number of times that such other entity arranged examinations, reviews and/or studies on behalf of Hartford in each of 2005 through 2007; (b) the total amount that Hartford paid to such entity in each of 2005 through 2007.

**Objection**: Hartford objects to Interrogatory No. 8 on the grounds that it is overly broad, unduly burdensome and seeks information which is beyond the permissible scope of discovery. This Interrogatory seeks information which does not bear on the conflict of interest issue relevant to these proceedings.

**Response:** Subject to and without waiving the foregoing Objections, Hartford states that the independent medical records reviewers identified in Hartford's response to Interrogatory 6 were retained by UDC or MAG.

In 2005, UDC was retained by Hartford, and UDC in turn retained independent physicians, to perform 2,517 medical record reviews on disability claims submitted to Hartford. In 2005, Hartford paid $3,558,187 to UDC for services.

In 2005, MAG was retained by Hartford, and MAG in turn retained independent physicians, to perform 1,396 reviews for Hartford. In 2005, Hartford paid $1,089,103 to MAG for services.

In 2006, UDC was retained by Hartford, and UDC in turn retained independent physicians, to perform 1, 1774 medical record reviews on disability claims submitted to Hartford. In 2006, Hartford paid $2,515,168 to UDC for services.

In 2006, MAG was retained by Hartford, and MAG in turn retained independent physicians, to perform 1,179 reviews for Hartford. In 2006, Hartford paid $1,024,398 to MAG for services.

In 2007, UDC was retained by Hartford, and UDC in turn retained independent physician, to perform 893 medical record reviews on disability claims submitted to Hartford. In 2007, Hartford paid $1,272,128 to UDC for services.

In 2007, MAG was retained by Hartford, and MAG in turn retained independent physicians, to perform 612 reviews for Hartford. In 2007, Hartford paid $610,165 to MAG for services.

9. Interrogatory No. 9: Please identify the individual(s) at Hartford who have responsibility to monitor entities identified in response to Interrogatory 6, including without limitation, that entities' performance, utilization, quality control, profitability and/or contractual duties and obligations. With respect to each such individual state that person's: (a) name; (b) current job title; (c) all previous job titles and the dates that person held each job title listed; (d) qualifications (which includes, but is not limited to, education and training, degrees, certifications, board certifications, diplomas, and certificates); (e) duties and functions performed (f) the name of their direct supervisor for the years 2005 through 2007; and (g) the name of their direct reports for the years 2005 through 2007. Please attach the curriculum vitae of any medical professional or occupational consultant identified.

**Objection**: Hartford objects to Interrogatory No. 9 on the grounds that it is overly broad, unduly burdensome and seeks information which is beyond the permissible scope of discovery insofar as it is not reasonably calculated to lead to the discovery of admissible evidence. In addition, the term "monitor" is unduly vague. The information requested about each individual is also overly broad. For example, Hartford is requested to identify the "duties and functions performed" by each individual identified by Hartford over a three-year period, as well as all "training" that they have received. Again, this Interrogatory does not seek information which is relevant to the conflict of interest issue.

**Response**: Subject to and without waiving the foregoing Objections, and pursuant to its agreement with Plaintiff's counsel to limit its response to subsections (a), (b), (e) and (f) only, Hartford responds as follows:

1. 2005 -2007 Barbara S. Campbell, AVP & Director of Clinical Practices. Supervisor Harry S. Monti. Responsibilities include clinical vendor management and quality control and Best Practices, Clinical.

2. 2006 - 2007 Sue Gowan, Clinical Vendor Relationship Manager. Supervisor Nancy Aker. Responsibilities include clinical vendor management and quality control.

3. 2007 - Present Tiffany Dyenson, Clinical Vendor Relationship Manager Anthony McGovern. Responsibilities include clinical vendor management and quality control.

10. Interrogatory No. 10: Identify all active steps taken by Hartford, or any employee, agent or consultant of Hartford, to reduce potential bias and/or promote accuracy, including without limitation: (a) walling off claims administrators from those interested in firm finances; (b) imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits; (c) creating interdepartment information walls; (d) creating incentives to reward claims processors for their accuracy; and/or (e) creating internal controls as a method of producing administrative accuracy.

**Objection**: Hartford objects to Interrogatory No. 10 to the extent it seeks a description of "all active steps" and has no temporal limitation.

**Response**: Subject to and without waiving the foregoing Objections, see response to Interrogatory Nos. 2 and 4. *See also* all documents produced in this litigation.



Case 1:22-cv-00306-DCLC-CHS Document 20-13 Filed 07/25/23 Page 20 of 26
PageID #: 10297
Exhibit 13 Page 20 of 26

11. Interrogatory No. 11: Please state: (a) the manner in which premiums were paid for plaintiff's long term disability coverage and the amount of the premium paid by the plaintiff; and (b) the amount of monthly benefits - on a month-to-month basis - to which plaintiff would be entitled if plaintiff prevails in this action.

**Objection**: Hartford objects to Interrogatory No. 11 on the grounds that it is overly broad, unduly burdensome and seeks information which is not reasonably calculated to lead to the discovery of admissible evidence. The manner in which premiums were paid and the amount of the premiums cannot possibly be relevant to the conflict of interest issue. In addition, the Interrogatory assumes that Plaintiff would be entitled to future benefits if she prevails, which is not the case. If plaintiff were to prevail, she would still be subject to proving a continued entitlement to disability benefits.

**Response:** The policy affording long-term disability coverage to the plaintiff is a group policy issued by Hartford to plaintiff's former employer, the policyholder. When the policyholder tendered a premium payment to Hartford, its premium payment was a payment for insurance coverage for all eligible employees, including the plaintiff. No specific premium payments were made for plaintiff's long term disability coverage. As such, Hartford is unable to answer this interrogatory to the extent it seeks the amount of premiums paid by the plaintiff or her former employer for the coverage afforded to the plaintiff. Hartford's records do reflect that with respect to the plaintiff long-term disability coverage, that plaintiff paid to her employer one-hundred percent of the premiums due for her long term disability coverage.

12. Interrogatory No. 12: Please state the amount of the reserve placed in plaintiff's claim.

**Objection**: Hartford objects to Interrogatory No. 12 on the grounds that the amount of the reserve placed on Plaintiff's claim is not relevant to conflict of interest issue.

**Response:** Subject to and without waiving the foregoing Objections, Hartford states that the reserves placed on Plaintiff's disability claim were $104,829 at the time the claim was terminated. The reserve placed on her life insurance waiver of premium claim was $27,113.

13. Interrogatory No. 13: Identify each and every computer database utilized by Hartford and any affiliated entity for the years during which plaintiff's claim was pending, through and including the year in which any adverse benefit determination was made on plaintiff's claim.

**Objection**: Hartford objects to Interrogatory No. 13 on the grounds that it is overly broad unduly burdensome and beyond the permissible scope of discovery insofar as it is not reasonably calculated to lead to the discovery of admissible evidence. Identifying "each and every computer database utilized by Hartford and affiliated entity" for the years Plaintiff's claim was pending is an incredibly difficult burden. In addition, the Interrogatory is vague, ambiguous and relates to Hartford entities that had nothing to do with the decision at issue. This Interrogatory does not seek information related to the conflict of interest issue.

**Response**: Subject to and without waiving the foregoing Objections, and pursuant to its agreement with Plaintiff's counsel to limit its response to those systems used in claims handling, Hartford identifies the following databases: Disability Claim System ("DCS"), COMPASS, HITS, and Appeal Log -- MS Access Database.

Dated: January 30, 2009

TROUTMAN SANDERS LLP

By: ______________________

Christina H. Bost Seaton (CB-7667)
TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 704-6000

David E. Constine, III (VSB No. 23223)
Admitted *pro hac vice*
Troutman Sanders LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1200
FAX (804) 697-1339

Attorneys for Defendant
Hartford Life and Accident Insurance Company

**VERIFICATION OF INTERROGATORY RESPONSES**

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

By: Bruce Luddy
Bruce Luddy
Director, Litigation and Appeals

STATE OF Conn.

City/County of Hartford, to-wit:

Subscribed and sworn to, before me, a Notary Public of and for the jurisdiction aforesaid, this 30 day of January, 2009.

Eunice C. Johnson
Notary Public

My commission expires: 2/28/2013.

CERTIFICATE OF SERVICE

I hereby certify that I am attorney for Defendant and that on January 30, 2009, I cause to be served by first class mail a true and correct copy of Responses to discovery by Defendant to the following:

TO:
Scott M. Riemer
60 East 42nd Street
Suite 2430
New York, NY 10165

Dated: January 30, 2009.

David E. Constine, III (VSB No. 23223)
Admitted *pro hac vice*
Troutman Sanders LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1200
FAX (804) 697-1339

1787114